**Ralph BAILEY, Plaintiff,**

v.

**CONTAINER CORPORATION OF AMERICA, Defendant.**

**Civ. A. No. C-1-84-0878.**

United States District Court, S.D. Ohio, W.D.

Oct. 2, 1984.

Opinion on Reconsideration Jan. 10, 1985.

James B. Helmer, Jr., Virginia Conlan Whitman, Ann Lugbill, Cincinnati, Ohio, for plaintiff.

Stephen S. Eberly, Cincinnati, Ohio, for defendant; Dinsmore & Shohl, Cincinnati, Ohio, of counsel.

## MEMORANDUM AND ORDER

DAVID S. PORTER, Senior District Judge:

This age discrimination case is before the Court upon defendant's motion to dismiss or strike (doc. 3), plaintiff's response (doc. 5) and defendant's reply (doc. 7). Plaintiff has requested oral argument; however, since we resolve the issues raised in his favor, hearing is unnecessary.

The complaint asserts two causes of action. The first arises under the Age Discrimination in Employment Act, 29 U.S.C. § 626 and related statutes, jurisdiction obtaining under 29 U.S.C. § 626 and 28 U.S.C. § 1331. The second arises under Ohio's age discrimination law, Ohio Rev.Code Ann. § 4101.17 (Page's 1980), jurisdiction obtaining under 28 U.S.C. § 1332, there being diversity of citizenship. Plaintiff also alleges pendent jurisdiction over the state law claim.

Defendant raises a plethora of arguments regarding the propriety of plaintiff's maintaining either of his claims in this forum; we consider them *seriatim*.

*Facts*

Plaintiff was a 22–year employee of defendant, a foreign corporation, at one of its Cincinnati, Ohio facilities. He was terminated on July 28, 1982, at which time he was 42 years old. The complaint alleges, and defendant apparently does not dispute, that plaintiff properly filed a timely complaint with the Equal Employment Opportunity Commission more than 60 days prior to filing this action on June 8, 1984.

About a week after the complaint in this case was filed, plaintiff sent notice, by registered mail, of his allegations to the Ohio Civil Rights Commission. That notice informed the OCRC that the complaint herein

had been filed, and purported to reserve plaintiff's right to proceed in this Court (doc. 5, Exhibit A).

### A. *Motion to Dismiss Federal Claim*

■ Ohio is concededly a "deferral State" as that term was used in *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 758, 99 S.Ct. 2066, 2072, 60 L.Ed.2d 609 (1979) in interpreting Section 14(b) of the Age Discrimination in Employment Act, 29 U.S.C. § 633(b). Because that is the case, discriminatees are obliged to seek review of the facts of their case by the relevant State agency. § 633(b) provides that in deferral States, "no suit may be brought under ... this Act before the expiration of 60 days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated ...."

■ As defendant notes, *Oscar Mayer* provides that providing deferral states with an opportunity to resolve age discrimination grievances is mandatory and jurisdictional. 441 U.S. at 756–58, 99 S.Ct. at 2071–73. Because that is true, defendant invokes the peculiarities of Ohio's age discrimination laws in an attempt to show that plaintiff is forever barred from prosecuting an ADEA claim. Examination of the Ohio scheme is necessary to develop defendant's claim.

An Ohioan who believes that he or she was a victim of age discrimination has three alternatives: Filing a claim with the OCRC under Ohio Rev.Code Ann. § 4112.05 (Page's 1980); filing a civil action "in a court of competent jurisdiction" under Ohio's general employment discrimination statute, Ohio Rev.Code Ann. § 4112.02(N) (Page's 1980); or filing a civil action based upon the specific age discrimination statute, Ohio Rev.Code Ann. § 4107.17 (Page's 1980).

The difficulty arises from the fact that the legislature made each of these three remedies exclusive. That is, a discriminatee who files a complaint with the OCRC may not sue his employer under either of the statutory provisions, and one who sues under one of the statutory provisions may not gain review of his or her claim by the OCRC, or sue under the other civil-action statute.

Defendant asserts that filing with the OCRC is a prerequisite to filing an ADEA complaint in this Court; that by filing claims based upon Ohio law in this Court, plaintiff has lost his right to file a claim with the OCRC; and that because plaintiff cannot file with the OCRC, he cannot prosecute an ADEA claim.

Whatever the superficial logic of this argument, it is of no legal moment. In *Oscar Mayer,* 441 U.S. at 759, 99 S.Ct. at 2073, the Court noted that Section 14(b)

requires only that state proceedings be commenced 60 days before federal litigation is instituted; besides commencement no other obligation is placed upon the ADEA grievant. In particular, there is no requirement that, in order to commence state proceedings and therefore preserve federal rights, the grievant must file with the State within whatever time limits are specified by state law.

Because "Congress did not intend to foreclose federal relief simply because state relief was also foreclosed," *id.* at 761, 99 S.Ct. at 2074, the Court ruled that the plaintiff, who had not proceeded before the State conciliation agency at all, "may yet comply with the requirements of § 14(b) by simply filing a signed complaint" with the agency. *Id.* at 764, 99 S.Ct. at 2075. "Meanwhile, the federal suit should be held in abeyance." *Id.*

■ While acknowledging that there may be differences between a state statute of limitations and the provision under consideration here, we think the similarities between this case and *Oscar Mayer* render that case clearly controlling. The convolutions of Ohio's statutory scheme are such that plaintiffs who choose to proceed under both federal and state law are forced to do as has this plaintiff. This Court has repeatedly held that the appropriate procedure is for a letter complying with the terms of § 14(b) to be sent to the OCRC after filing of the federal case, with the

federal case stayed for 60 days. *Perazzo v. Top Value Enterprises, Inc.,* 590 F.Supp. 428, 432 (S.D.Ohio 1984) (Rice, J.); *Merkel v. Scovill, Inc.,* 570 F.Supp. 133, 137 (S.D.Ohio 1983) (Spiegel, J.); *Krenning v. Darling & Co.,* 572 F.Supp. 923 (S.D. Ohio 1983) (Rubin, C.J.).[1] We see no reason whatsoever to, as defendant urges, "depart from these holdings and to find plaintiff's ADEA claim foreclosed by his choice" to sue under State, as well as federal, law. Since well over 60 days have elapsed since plaintiff sent his letter to the O.C.R.C., we need impose no stay to permit the O.C.R.C.'s processes to proceed.

### B. *Preemption*

■ Defendant next argues that, "to the extent [Ohio law] seeks to permit recovery of compensatory and punitive damages by a victim of age discrimination, it is preempted by the ADEA." The rule is that

> [p]reemption occurs when compliance with both federal and state regulations is physically impossible, the nature of the subject matter requires federal supremacy and uniformity, or Congress intended to displace state legislation.

*Simpson v. Alaska State Commission for Human Rights,* 423 F.Supp. 552, 555 (D.Alaska 1976), *aff'd,* 608 F.2d 1171, 1175 (9th Cir.1979), *citing Florida Lime and Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–48, 83 S.Ct. 1210, 1217–20, 10 L.Ed.2d 248 (1963). It is clear that compliance with both federal and state law in this instance is not physically impossible; it simply ups the ante. Defendant does not aver that "the nature of the subject matter requires federal supremacy and uniformity," nor could it, given the peaceful coexistence of federal and state regulation of employment discrimination in recent years. Defendant does, however, suggest that "Congress intended to displace state legislation" on the matter of what damages are available under the ADEA. As defendant poses the matter, if Ohio permits such damages, then the goal of "accomplishment and execution of the full purposes and objectives of an Act of Congress" is frustrated. Doc. 3 at 6, *citing Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941) (States may not require aliens to register with State agency in light of Congressional enactments establishing federal registration.)

Defendant refers us to no cases which have so held. *Simpson,* 423 F.Supp. at 555–56, is the only case to which we are referred which has dealt with the issue at all. There, plaintiff sued under Alaska's age discrimination laws, which provided no cutoff age parallelling that in the ADEA. 29 U.S.C. § 631. Defendant asserts that *Simpson* "is not ... contrary to its position", doc. 3 at 9, since the court there found "that the state and federal laws were complementary, with no specific conflicts between them." *Id.*

Before evaluating this contention, we set out the language by which the *Simpson* court disposed of the preemption argument:

> The essence of defendant's attack is based on the theory that the [ADEA] has preempted state statutes *to the extent that such statutes are broader than the federal law.* Under this theory any state age discrimination statute would be confined to the ages 40 to 64. Such a construction would affect several other states with employment discrimination statutes using only the term 'age' as well as others which specifically delineate limits beyond the federal bounds.
>
> This doctrine of 'partial preemption,' if available at all, does not apply to this case. In the field of employment practices states possess broad authority under their police powers and state laws in the field are not easily preempted .... Nothing in the scope or intent of the [ADEA] indicates that Congress intended to oust the states from this area of concern.

423 F.Supp. at 556 (footnotes and citation omitted; emphasis supplied).[2]

---

**1.** Defendant submits that Chief Judge Rubin has since reversed the position he took in *Krenning,* 572 F.Supp. at 924, and now does not entertain combined federal and state age-based claims. We are not in a position to comment on this representation, as the orders entered in the unreported cases to which defendant refers do not delineate reasons for the dismissal of the state claims therein. However, we do note that those asserted only pendent jurisdiction as the basis for the Court's jurisdiction over the Ohio-law claims, while in this case the Ohio claim is before us under diversity of citizenship. Equally to the point, there is no authoritative indication that *Krenning* is not still viable in appropriate circumstances.

**2.** We note that the Ninth Circuit, noting the "care and precision" with which the district court addressed this issue, specifically adopted this language as its own. *Simpson,* 608 F.2d at 1175.

Defendant asserts, as the sole area of alleged preemption, that the Congressional purpose of seeking agency conciliation of employment discrimination claims is seriously undermined by the potential for punitive damages: "With the promise of a punitive damages award beckoning him forward, a plaintiff understandably will forego the agency process in favor of a shot at the proverbial punitive damages pot-of-gold." Doc 3 at 9.

It is certainly true that neither compensatory nor punitive damages are available under the ADEA. *See Hill v. Spiegel,* 708 F.2d 233, 235–36 (6th Cir.1983) and cases cited therein. However, the Ohio legislature has, it appears, concluded that its constituency is permitted to seek such damages in age discrimination cases. This is not a case where State law requires either party "to do precisely what the federal Act forbids them to do." *Michigan Canners and Freezers Association, Inc. v. Agricultural Marketing and Bargaining Board,* — U.S. —, —, 104 S.Ct. 2518, 2527, 81 L.Ed.2d 399 (1984). Rather, the situation here is that Ohio has seen fit to provide remedies for discriminatees in addition to those provided for in the Fair Labor Standards Act, and to do so in an area of the law where Congress has specifically encouraged the states to act. *See* 29 U.S.C. § 633(a) and (b).

■ Plaintiff responds to defendant's argument by asserting that the availability of enhanced remedies under Ohio law may well increase the possibility of conciliation, since "the primary obstacle to settlement is the employer's basic unwillingness to negotiate and entertain the possibility of settlement, not the unemployed victim's desire" for punitive damages. Doc. 5 at 17. We see no reason to enter this dispute, except to note that both sides probably have a point. Let it suffice to say that it is our best judgment that because there is no clear statement of Congressional intent to preempt, no requirement upon any party to act in accordance with state law at the risk of violating federal law, and nothing inherent in the nature of age discrimination

which requires federal preeminence, this is not an appropriate case for preemption.

## C. *Abstention*

Defendant next asserts that we should abstain from determination of plaintiff's State-law claims based upon *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[3] We find this suggestion wholly without merit, and so discuss it only briefly.

■ *Burford* abstention is, as Professor Wright notes, "proper if there is a difficult question of state law bearing on policy problems of substantial public importance transcending the result in the case at bar." C. Wright, *Law of Federal Courts* 311 (4th ed. 1983). Here, plaintiff points to the fact that federal courts in the two districts of Ohio have reached different decisions as to the availability of punitive and compensatory damages under Ohio law. *Compare Schlosser v. Firestone Tire & Rubber Co.,* Civil Action No. C82— (N.D.Ohio, April 27, 1983) (such damages not available under *Fawcett v. G.C. Murphy & Co.,* 46 Ohio St.2d 245, 348 N.E.2d 144 (1976)) *with Merkel v. Scovill,* 573 F.Supp. 1055, 1061, 1065–68 (S.D.Ohio 1983) (such damages available). We first note that reliance upon *Fawcett,* 46 Ohio St.2d 245, 348 N.E.2d 144, is arguably misplaced, since that cases's holding that § 4101.17 conferred no private right of action has been effectively reversed by legislative enactment. However, assuming that *Schlosser* and *Merkel* are irreconcilable, "the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 816, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483 (1974).

■ In addition, we are persuaded by plaintiff's presentation of the OCRC's position that in lawsuits under § 4101.17, "the Court may award compensatory damages, punitive damages, and attorney fees." Doc. 5, Exhibit D at 3. While not controlling, the OCRC's interpretation of the very

---

3. Defendant actually invokes both *Burford* and *Pullman* abstention doctrines, *see Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Reference to *Pullman* is, we believe, especially inapposite here since such abstention lies "where

*state action* is being challenged in federal court as contrary to the federal constitution, and there are questions of state law that may be dispositive of the case." C. Wright, *Law of Federal Courts* 303 (4th ed. 1983) (emphasis supplied).

statute it is responsible for enforcing certainly suggests that the matter is substantially less murky than defendant asserts. *Cf. Baker v. Cincinnati Metropolitan Housing Authority,* 490 F.Supp. 520, 526 (S.D.Ohio 1980), *aff'd* 675 F.2d 836 (1982).

In sum, there is nothing about this case which takes it outside the realm of garden-variety diversity suits, which frequently require the court to predict "the decision of ... Judges of the highest [State] court ...." *Cooper v. American Airlines, Inc.,* 149 F.2d 355, 359 (2d Cir.1945). There is no basis for abstention.

### D. *Stay*

Defendant next asserts that the state-law claims herein should be stayed pending the outcome of the ADEA claim; specifically, it asserts that such a stay is mandated by the "plain language" of 29 U.S.C. § 633(a). That statute provides that

[n]othing in this chapter shall affect the jurisdiction of any agency of any State performing like functions with regard to discriminatory employment practices on account of age except that upon commencement of action under this chapter such action shall supercede any State action.

■ As to that argument, it suffices to note that this Court is not "any agency of any State;" we therefore see no applicability of the statute to the situation at bar.

Defendant also asserts that permitting the claims based upon Ohio law to go forward together with the ADEA claim is prohibited under *Hill v. Spiegel,* 708 F.2d 233 (6th Cir.1983). In that case, the trial court permitted the jury to award damages for plaintiff's pain and suffering in an ADEA case. The Court of Appeals first determined that such damages are not available under the ADEA, *id.* at 235, and then determined that evidence of pain and suffering, irrelevant to any issues legitimately before the Jury, was inadmissible and therefore prejudicial. *Id.* at 236.

■ Hill does not, we believe, suggest that courts trying ADEA cases may never permit additional claims to be tried simultaneously. Trial courts have far too much experience in effectively trying, for example, claims based upon Title VII and 42 U.S.C. § 1981, for such a rule to be read into *Hill* absent an express holding to that effect. *Cf. Burnett v. Grattan,* — U.S. ——, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984) (State constitutional claims appended to federal civil rights claims). We are also aware that this Court has recent experience in presenting ADEA claims together with State-law claims to juries, with acceptable results. *See Merkel,* 573 F.Supp. 1055. Finally, we note that under the Federal Rules of Civil Procedure, trial courts have open to them means other than staying of a cause of action by which to assure that parties are not prejudiced by presentation of more than one claim to a jury. We therefore decline defendant's invitation to stay the State-law claims herein.

### E. *Availability of Damages*

■ By way of anticlimax, defendant finally argues that compensatory and punitive damages are not available under § 4101.17. As the foregoing has perhaps indicated, we disagree, based upon the *Merkel* cases, as well as upon the interpretation of the statute by the Ohio Civil Rights Commission. In support of its assertion, defendant cites *Barker v. Scovill, Inc.,* 6 Ohio St.3d 146, 149, 451 N.E.2d 807 (1983), where the Ohio Supreme Court referred to the ADEA as "the federal counterpart to R.C. [§] 4101.17." *Barker,* however, addressed only issues pertaining to burden of proof and definitory matters. The case contains no mention of issues of damages. Given the absence of holdings either way by Ohio courts, we find the statement of the Ohio Civil Rights Commission persuasive, and therefore agree with this Court's prior holding in the *Merkel* cases that such damages are available.

### F. *Conclusion*

Defendant's motion to dismiss or strike is overruled in all regards. Of course, if the United States Court of Appeals for the Sixth Circuit, before which the *Merkel* cases are now pending, or the courts of Ohio render decisions between the date of this Order and trial herein, the matters here determined may be brought before the Court again. However, for such to occur, leave to file an additional motion must be sought by way of a *brief* submission.

SO ORDERED.

## ON MOTION FOR RECONSIDERATION

Evidence has been brought before the Court which calls into question the proprie-

ty of reliance upon the document generated by employees of the Ohio Civil Rights Commission entitled "Notice to Charging Parties Alleging Age Discrimination Under Federal and/or State Law." It appears that, at a minimum, that document was drafted not to reflect the official position of the OCRC, but rather only to reflect this Court's prior decision in *Merkel v. Scovill, Inc.,* 573 F.Supp. 1055 (S.D. Ohio 1983) (app. pending). Because our conclusion that compensatory and punitive damages are, in an appropriate case, available under the Ohio age discrimination statute was based upon both the *Merkel* holding and upon the OCRC document, we now vacate that portion of the principal opinion which relies upon the "Notice to Charging Parties" and base our holding that such damages are available exclusively upon *Merkel.*

Defendant has also tendered a brief order from an Ohio Court of Common Pleas which dismissed claims for such damages, *South v. The Toledo Edison Company,* No. 83–2525 (Lucas Co. Ct. Com. Pleas, September 28, 1984). We do not view that decision, bereft as it is of reasons for the conclusion reached, as significantly militating against our adoption of *Merkel,* and so we decline to reconsider the holding on that basis.

In view of the controversy surrounding this issue and the fact that it will undoubtedly be resolved by both Federal and State Courts of Appeals, we anticipate structuring the trial of this action in such a way as to avoid the necessity of a retrial of the entire matter in the event that our conclusion on the damages issues proves erroneous.

Because defendant appears to concede that its motion to strike plaintiff's jury demand on the state claims hinges upon dismissal of the claims for compensatory and punitive damages, *see* doc. 22 at 9–14, our determination that those claims may be maintained effectively moots defendant's motion to strike, and it is therefore denied. Of course, the Court will serve as trier of fact for all equitable issues presented at trial.

SO ORDERED.