797 F.2d 271
 41 Fair Empl.Prac.Cas. 290,
40 Empl. Prac. Dec. P 36,367,
21 Fed. R. Evid. Serv. 346
Walter MITROFF, Plaintiff-Appellee, Cross-Appellant,
v.
XOMOX CORPORATION, Defendant-Appellant, Cross-Appellee.
 Nos. 85-3757, 85-3029, 85-3097.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 1, 1986.
Decided July 8, 1986.
Rehearing and Rehearing En Banc Denied Sept. 3, 1986.
 
 Robert J. Townsend, argued, Taft, Stettinius & Hollister, Cincinnati, Ohio, for Xomox Corp.
 Virginia Conlan Whitman, James B. Helmer, Jr., argued, Robert Clark Neff, Jr., Ann Lugbil, Cincinnati, Ohio, for W. Mitroff.
 Before MARTIN and GUY, Circuit Judges, and REED, District Judge.*
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 These appeals and cross-appeal arise from a judgment for plaintiff and certain orders entered subsequent to a jury verdict in this age discrimination case. For the reasons given below, we affirm in part and vacate in part and remand for a new trial.
 
 I.
 
 2
 Defendant, Xomox Corporation, is a wholly owned subsidiary of Emerson Electric Company, and is engaged in the production and sale of valves and actuators. Defendant hired plaintiff, Walter Mitroff, in 1974 as a field salesman when he was 43 years old. In November, 1978, he became Field Marketing Representative in Cincinnati. In July, 1979, he was given the new title of Manager of Field Marketing and Distribution, although there was no change in his duties. On April 1, 1980, he was made Manager of Distribution, with new duties. He continued in that position until he was laid off on June 24, 1982, after he had worked for defendant for eight and one-half years. He was the only person to ever hold the position of Manager of Distribution. Plaintiff received good job performance reviews while he was a salesman and representative, along with bonuses and regular raises in salary. Defendant does not really dispute plaintiff's record while a salesman, but claims that plaintiff performed poorly as Manager of Distribution. Defendant claims plaintiff's major job duty was to travel to where the distributors were to work with them, but that he consistently failed to do so although told on numerous occasions by his supervisor that he should. Plaintiff does not really contest this.
 
 
 3
 Defendant's witnesses testified that in 1981-1982 Xomox suffered a drastic reduction in sales and profits caused by the recession. Plaintiff claimed, and Xomox does not dispute, that Emerson, the parent company, did well throughout this period; but Xomox counters with the claim that it had to succeed as a separate company. In 1981-1982, Xomox did make a profit, but its witnesses testified that it would have been a huge loss instead had employees not been terminated. In Cincinnati, Xomox fired 113 non-exempt (hourly) and 53 exempt (salaried) employees. The 53 exempt employees, of whom plaintiff was one, were laid off from September 1981 to December 1982. Defendant had never before laid off exempt employees for economic reasons. Defendant also merged and sold divisions, reduced bonuses, discontinued company cars, cut salaries, and eliminated profit sharing. Employees in the foreign divisions were cut from 806 to 681, and employees in the United States from 796 to 597.
 
 
 4
 Plaintiff does not dispute that of the 53 exempt employees terminated in Cincinnati 14 had more responsibility and higher paying jobs than he did, and many were fired prior to him. This group also included people younger than plaintiff. In June, 1982, defendant eliminated four exempt office positions in sales and marketing, causing to be terminated: plaintiff (age 51), R. Koppman (26), M. Runion (25), and K. Anderson (31) (who had more seniority than plaintiff). In July, another position was eliminated and in October another 10, terminating people with a range of ages. Defendant says it selected plaintiff's position for elimination in part because of his poor performance. Some of plaintiff's duties were eliminated and the rest reassigned in major part to younger employees.
 
 
 5
 Mitroff filed a complaint against Xomox on June 22, 1983, alleging that he was discharged for age without good cause in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 626, and Sec. 16(b) of the Fair Labor Standards Act, 29 U.S.C. Sec. 216(b). Plaintiff also filed pendent state claims of age discrimination under Sec. 4101.17 of the Ohio Revised Code. He sought reinstatement, restoration of pension and other fringe benefits, back pay, back fringe benefits, damage for loss of reputation, and liquidated and punitive damages. The district court dismissed the pendent state claims. The federal claims were tried to a jury in October, 1984. Answering special interrogatories, the jury returned a verdict in favor of plaintiff, awarding damages of $99,144.00 for lost salary and bonuses, $74,300.00 for lost fringe benefits, and $173,444.00 for "willful acts."Subsequent to the entry of the jury verdict, Xomox filed motions seeking judgment n.o.v. or a new trial or reduction of damages. Mitroff concurrently filed a motion seeking reinstatement to his former job. The district court denied Mitroff's motion for reinstatement and granted a "remittitur" of the total award of damages for willful acts ($173,444.00). If Mitroff did not accept the "remittitur" within twenty days, the court indicated it would grant Xomox's motion for a new trial. On December 17, 1984, Mitroff accepted the remittitur. Two days later, Mitroff filed a motion for equitable relief in the form of front pay, which was denied by the district court on January 4, 1985. On January 30, 1985, plaintiff filed a motion for attorney's fees, and on September 3, 1985, the district court awarded $97,135.82 in attorney's fees and $5,936.26 in costs.
 
 
 6
 The parties have raised a number of issues on appeal. Defendant contends that the trial court made three major errors at trial: evidence was admitted without a proper foundation and in violation of the rule against hearsay; the judge improperly refused to allow surrebuttal witnesses as to that evidence; and an improper jury instruction was given. Defendant also argues that the damages awarded by the jury are excessive. Further, defendant challenges the sufficiency of the evidence presented at trial to support a verdict for plaintiff.
 
 
 7
 Plaintiff raises three issues on appeal. He contends that equitable relief, in the form of reinstatement or front pay, should have been granted; that his pendent state claim was improperly dismissed; and that the trial court had no discretionary power to grant a remittitur of the liquidated damages awarded by the jury. Defendant raises several procedural objections to plaintiff's appeal.
 
 
 8
 Defendant also has filed a second appeal in which it challenges the award of attorney's fees claiming that the trial court used too high an hourly rate.
 
 
 9
 Lastly, plaintiff has also filed a motion to strike improper material from defendant's reply brief on the basis that defendant improperly addressed issues which are plaintiff's and on which plaintiff should have the final word.
 
 
 10
 We find it unnecessary to discuss all of these issues since we find that defendant's contention that highly prejudicial evidence was improperly admitted is sufficiently meritorious to require a new trial.
 
 II.
 
 11
 At trial, one of the most significant and certainly one of the most damaging parts of plaintiff's case concerned remarks allegedly made by Eugene McAllister, an assistant personnel manager for Xomox. Both Mitroff, in his case in chief, and a rebuttal witness, Barbara Reed, testified that McAllister told them age discrimination existed at Xomox or other Emerson companies. It is this testimony which defendant challenges as without foundation and inadmissible hearsay.
 
 
 12
 The disputed testimony developed as follows. At trial on the afternoon of October 15, 1984, during Mr. Mitroff's direct testimony, he was asked why he brought an age discrimination suit. He said because younger people with less seniority were retained--performing his prior functions and in other positions which he could have performed--and because "Mr. Gene McAllister told me that there was a pattern of age discrimination." (App., Vol. III, at 814). The jury was told to disregard that statement, and then plaintiff was asked who McAllister was. The judge then explained to the jury the hearsay rule as it relates to the statements of an agent.[1] (App., Vol. III, at 815.) Defendant's counsel objected to this line of questioning and the judge held a bench conference. Defense counsel argued that McAllister's authority was confined to hourly employees and that he knew nothing about decisions as to exempt employees. Counsel directed the court's attention to Hill v. Spiegel, Inc., 708 F.2d 233 (6th Cir.1983), concerning the scope of an employee's authority. Plaintiff's counsel argued that as an assistant personnel manager McAllister had access to all records dealing with terminations and layoffs. Defense counsel responded that there had been no testimony that McAllister had access to those records, and thus no foundation laid (App., Vol. III, at 818). The judge decided to let plaintiff's testimony go forward under Fed.R.Evid. 801(d)(2)(D), but stated that defendant had protected his objection that there was no foundation laid as to McAllister's knowledge on which to base an opinion. Mr. Mitroff then testified that McAllister twice told him "that there was a pattern of age discrimination at Xomox" (App., Vol. III, at 819), first on February 3, 1983, and again in late March, 1983. He testified that on the second occasion Barbara Reed was also present. Reed is an insurance coordinator in the personnel department. No further details were given in plaintiff's testimony.
 
 
 13
 McAllister was called to testify by defendant on the afternoon of October 18. He denied that he ever made statements to plaintiff or to any one else to the effect that he thought there was a pattern of age discrimination at Xomox (App., Vol. IV, at 1240-1241). On cross-examination, McAllister acknowledged that on one occasion he went to Reed's house to deliver a pizza and some insurance papers, that both Reed and plaintiff were there, and that the three of them had a conversation.
 
 
 14
 On the morning of October 19, plaintiff called Barbara Reed to the stand as rebuttal witness (App., Vol. IV, at 1260). She testified as to the conversation which took place at her house. Plaintiff, Reed, and McAllister were eating pizza and drinking beer, and McAllister asked plaintiff about his job search. Reed began to testify that McAllister said he had had a conversation with three other employees. Defense counsel again objected on the basis of foundation. The judge allowed the questioning to continue. Reed then testified: "Gene said he didn't blame him [Mitroff] for feeling that there was a discrimination pattern, that he did feel that there was discrimination with other Emerson--there seemed to be a pattern with other Emerson Companies in age discrimination." (App., Vol. IV, at 1265). Reed then testified that McAllister told her in a later conversation that he was not going to tell the truth at deposition (App., Vol. IV, at 1267). She gave no other details.
 
 
 15
 On appeal, defendant argues that the trial court was incorrect in finding the testimony not hearsay and in admitting it without a proper foundation, particularly in light of McAllister's testimony that he never made such statements.
 
 
 16
 It is not our role nor that of the trial court in a jury trial to weigh the credibility of witnesses. It is for the jury to determine who is telling the truth--whether McAllister said there was a pattern of age discrimination at Xomox, as plaintiff testified; or whether he said there is such a pattern merely at other Emerson companies, as Reed testified; or whether he never made any such statement. However, it is the trial court's responsibility to determine whether the above testimony could be presented to the jury, and it is our duty, upon proper objection, to review that decision. We review admission of testimony and other evidence by the trial court under the abuse of discretion standard. Clady v. County of Los Angeles, 770 F.2d 1421 (9th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1516, 89 L.Ed.2d 915 (1986); Woods v. Burlington Northern RR Co., 768 F.2d 1287 (11th Cir.1985), cert. granted, --- U.S. ----, 106 S.Ct. 1456, 89 L.Ed.2d 714 (1986). We find that Mitroff's and Reed's testimony as to alleged statements by McAllister were admitted in error.
 
 
 17
 First, a statement of an agent or employee may be admissible against the principal (in this case Xomox) if within the scope of his agency or employment, but a proper foundation must be made for such a statement to show it was within the scope of his agency or employment. Litton Systems, Inc. v. American Telephone & Telegraph Co., 700 F.2d 785, 817 (2nd Cir.1983); Northern Pacific Railway v. Herman, 478 F.2d 1167, 1171 (9th Cir.1973). We find that a proper foundation was not laid for plaintiff's and Reed's testimony as to McAllister's alleged statements. The only information elicited from plaintiff as to McAllister's knowledge was that McAllister was an assistant personnel manager, and that point was developed only after the testimony as to the alleged statements had already been given. Plaintiff was not questioned as to any knowledge he had of the basis for McAllister's statements. McAllister testified after plaintiff, but even at that time was not questioned as to the possible basis for such statements. Reed's testimony added nothing further insofar as the basis of knowledge for the alleged statements is concerned and, indeed, only referenced the second occasion plaintiff claims such a statement was made. Reed testified that McAllister said he had had some conversation with three other employees. Evidently, this may have led to his alleged statement on age discrimination at other Emerson companies. However, Reed gave only those employees' names, not their positions or bases for knowledge nor did she give any connection between their alleged conversation with McAllister and McAllister's alleged statement to Reed and plaintiff.
 
 
 18
 Second, the statements allegedly made by McAllister were opinions--that there was a pattern of age discrimination at Xomox and that there was such a pattern with other Emerson companies. It is not clear whether the opinions of McAllister offered through the testimony of Mitroff were intended to be the opinions of an expert or lay witness. In either event, they amounted to legal conclusions. Fed.R.Evid. 701 provides:
 
 
 19
 If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.
 
 
 20
 Certainly Mitroff provided no information as to whether these opinions were rationally based on McAllister's perceptions. They did not contribute to a clear understanding of McAllister's testimony because it was Mitroff not McAllister who was testifying. Neither can it be said that the opinions helped with the determination of a fact in issue. To begin with, the question of whether age discrimination existed or not was the ultimate issue, not just a fact in issue. Although testimony which embraces an ultimate issue is not objectionable (Fed.R.Evid. 704), seldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness' and the witness turns into little more than an "oath helper." Fed.R.Evid. 705 does provide that an expert "may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data." However, before such an opinion may be admitted, the giver of the opinion must be qualified as an expert as required by Fed.R.Evid. 702:
 
 
 21
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 
 
 22
 Even if McAllister had repeated the alleged opinions from the witness stand, there was no attempt made to qualify him as an expert "by knowledge, skill, experience, training, or education" to give a legal conclusion as to the existence of age discrimination at Xomox or other Emerson companies. Further, we would conclude from this record that "scientific, technical, or other specialized knowledge" would not have assisted the jury, nor is there any indication in the record that McAllister could have been qualified as an expert by the trial judge. He was merely an assistant personnel manager who dealt with hourly employees, not someone with expertise in evaluating age discrimination claims of salaried employees.
 
 
 23
 We further find the error in admission of the Mitroff and Reed testimony to have been so prejudicial as to warrant reversal of the trial court's order denying a new trial.
 
 
 24
 Appellate courts are justifiably reluctant to upset lower court decisions on the basis of evidentiary rulings. However, in this case, although not ruling on the claimed insufficiency of the evidence, we do note that factually the case was very close. In close cases the improper admission of prejudicial evidence is all the more damaging, and here it would appear that arguably the McAllister testimony was the strongest evidence in plaintiff's favor at trial.
 
 III.
 
 25
 Although not addressing all of the issues raised by the parties, one we must address, since this matter is to be retried, is defendant's objection to one of the jury instructions given below. It reads in pertinent part:
 
 
 26
 The burden is on the defendant to produce enough evidence to convince you that the plaintiff was discharged for reasons unrelated to his age, but the ultimate burden of proving discrimination remains with the plaintiff.
 
 
 27
 (App., Vol. IV, at 1925.) Defendant claims the word "convince" improperly shifted the burden of proof set forth in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981):
 
 
 28
 First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." ... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
 
 
 29
 Id. at 252-53, 101 S.Ct. at 1093-94.
 
 
 30
 Plaintiff relies on Blackwell v. Sun Electric Corp., 696 F.2d 1176, 1181 (6th Cir.1983), where this court held:
 
 
 31
 But it is the defendant's burden to produce enough evidence to convince the trier of fact that the plaintiff was fired because he was incapable of performing his job. The plaintiff in this case certainly presented enough evidence to raise an inference of age discrimination until such inference was dispelled by an explanation from the defendant.
 
 
 32
 Defendant asserts that Blackwell misconstrued the defendant's burden as set forth in Burdine.
 
 
 33
 In the Blackwell quote from which "convince" is drawn, this court was not discussing jury instructions but, rather, was explaining that this circuit does not require rigid application of the McDonnell Douglas[2] guidelines in proving an age discrimination case. Neither was the word "convince" used in the district court's jury instructions which were approved by this court. The word "convince" drawn out of context from Blackwell is not an appropriate word to describe the defendant's burden of articulating a legitimate, nondiscriminatory reason, as directed by Burdine. Although in an after the fact analysis it might be said that a defendant who articulates a legitimate, nondiscriminatory reason for discharge and loses the case did not "convince" the fact finder, what actually occurs is that the fact finder determines that the reason articulated is pretextual. This is because the plaintiff has carried his burden of proof and convinced the fact finder of the pretext.[3] It is not because the defendant had failed to prove its legitimate, nondiscriminatory reason--a burden it does not have.
 
 
 34
 However, in Blackwell, this court held that in evaluating the adequacy of jury instructions they must be taken as a whole. 696 F.2d at 1181. The full instruction given below twice states that the burden is on the plaintiff to establish discrimination by a preponderance of the evidence, and the trial court also stated this principle before giving specific instructions. We find that the instructions given below, taken as a whole, fairly apprised the jury of the applicable law, but we specifically disapprove of using the word "convince" to describe the defendant's responsibilities with regard to the articulation of a legitimate non-discriminatory reason.
 
 IV.
 
 35
 The other issue we must address is plaintiff's appeal of the dismissal of his pendent state claim. The exercise of jurisdiction over pendent state claims is discretionary with the district court. See United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Cemer v. Marathon Oil Co., 583 F.2d 830, 832 n. 2 (6th Cir.1978). Although the trial judge below did not give a written opinion supporting his order of dismissal, the major contention defendant made below was that there is a dearth of state decisional law interpreting Ohio's age discrimination statute, Ohio Rev.Code Sec. 4101.17. Defendant claimed that numerous issues remained open, including availability of a jury trial and availability of compensatory and punitive damages, as the statute merely provides for "an appropriate remedy." Further, defendant claimed, if the court found pain and suffering damages were available under the state statute, which they are not under the federal law, that testimony would be highly prejudicial.
 
 
 36
 Plaintiff is correct that prior to the order at issue here, several federal judges in Ohio had published opinions determinative of the state law issues.[4] However, federal decisions interpreting state law were not what the Court envisioned in Gibbs when it directed federal courts to avoid decisions of state law under comity principles. In addition, those federal district courts which have retained jurisdiction in such actions in Ohio have split on the issue of compensatory and punitive damages under Sec. 4101.17. See Citro v. TRW, No. C82291 (N.D.Ohio 1984) (where Judge Dowd found such damages not available); Schlosser v. Firestone, 33 Fair Empl.Prac.Cas. (BNA) 1403, 1405-06 (N.D.Ohio 1983) (Judge Dowd, not available); Venezia v. Scovill, Inc., 592 F.Supp. 3 (S.D.Ohio 1983) (Judge Speigel, available); Merkel v. Scovill, 570 F.Supp. 141 (S.D.Ohio 1983), rev'd on other grounds, 787 F.2d 174 (6th Cir.1986) (Judge Spiegel, available); Bailey v. Container Corp. of America, 594 F.Supp. 629 (S.D.Ohio 1984) (Judge Porter, available).[5]
 
 
 37
 In the present case, at the time the court below dismissed the state claim, the state statute and state courts had been silent as to the extent of damages available under the Ohio law and the federal district courts which had spoken were split. State law was clearly unsettled. Given the uncertainty in the state law, we find no abuse of discretion in the trial court's refusal to exercise pendent jurisdiction over plaintiff's claim.
 
 
 38
 Another reason supporting the trial judge's decision not to hear pendent claims, even if it were clear that punitive and full compensatory damages are available under the state statute, is the possible prejudicial effect of testimony on those damages as to the ADEA claim. In Hill, 708 F.2d at 235-236, when the court found that testimony on pain and suffering was not available under the ADEA, it also found that the testimony was highly prejudicial and inflammatory and deprived the defendant of the right to a fair trial. See also Balmer v. Community House Ass'n of Birmingham, 572 F.Supp. 1048, 1049 (E.D.Mich.1983), where the court in an ADEA case dismissed the Michigan pendent age discrimination claim because it found that under Hill pain and suffering testimony "is prejudicial almost as a matter of law insofar as it may affect ADEA issues."
 
 V.
 
 39
 For future guidance, it is also necessary that we comment on the problem of the "remittitur." Both parties acknowledged at oral argument that the trial court's "remittitur" of the $173,444.00 in liquidated damages was not actually a remittitur but a judgment n.o.v. as to the issue of wilfulness. The judge below ordered that plaintiff accept the loss of the liquidated damages or face a new trial. A remittitur is proper where the judge finds the damages awarded excessive. Here, the issue was not excessiveness of damages but liability for liquidated damages. A district court has no discretionary power under the ADEA to order remittitur of liquidated damages, since such damages, if awarded, must be equal to the back pay award. Hill, 708 F.2d at 238. Thus, we construe the "remittitur" as a judgment n.o.v. as to the issue of wilfulness and, consequently, a denial of liquidated damages.
 
 VI.
 
 40
 Because we are remanding this case for a new trial, the issue of denial of liquidated damages becomes moot, as do the remaining issues raised on appeal, including sufficiency of the evidence, excessiveness of damages, refusal to allow surrebuttal witnesses, denial of equitable relief, the amount of attorney fees, and any procedural problems with plaintiff's appeal.
 
 
 41
 Lastly, plaintiff's motion to strike improper material from defendant's reply brief is denied for two reasons. First, plaintiff does not indicate in his motion in what specific way, if any, he claims to have been prejudiced. Second, the only one of plaintiff's issues addressed in defendant's reply brief which is not rendered moot by our decision is the pendent state claim issue. We find that portion of defendant's brief to be nonprejudicial to plaintiff. Defendant did not make additional arguments but merely updated its case citations.
 
 
 42
 Accordingly, the order of the district court granting defendant's motion to dismiss the pendent claim is AFFIRMED. The judgment of the district court is otherwise VACATED and this case is REMANDED for a new trial in accordance with this opinion.
 
 
 
 *
 Honorable Scott Reed, United States District Court, Eastern District of Kentucky, sitting by designation
 
 
 [1]
 Fed.R.Evid. 801. Definitions
 The following definitions apply under this article:
 * * *
 (d) Statements which are not hearsay. A statement is not hearsay if--
 * * *
 (2) Admission by party-opponent. The statement is offered against a party and is ... (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship....
 
 
 [2]
 McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)
 
 
 [3]
 "The dispositive motivational issue requires a consideration of the two opposing reasons for discharge.... The burden of producing evidence of 'pretext' essentially merges with the burden of persuasion, which always lies with the plaintiff." Wilkins v. Eaton Corp., 790 F.2d 515, 522 (6th Cir.1986)
 
 
 [4]
 Plaintiff also cites one state case, Ryan v. Scovill, Inc., 19 Ohio Bar Reports 434 (Ham. County, February 19, 1985), in which the judge found compensatory and punitive damages available under Sec. 4101.17. There are a couple problems with citing this case. First, this case was decided a year after the court below granted the motion to dismiss and thus is no support for the contention that the state law was settled at that time. Second, the state judge in Ryan did not discuss the damages issue but simply found it settled by Merkel v. Scovill, 570 F.Supp. 141 (S.D.Ohio 1983). The state judge is incorrect that he is bound by Judge Spiegel's decision on an unsettled point of state law
 
 
 [5]
 In Bailey the court stated that even assuming that Schlosser and Merkel are irreconcilable, " 'the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction.' Colorado River Water Conservation District v. United States, 424 U.S. 800, 816, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483 (1976)." 594 F.Supp. at 629. However, this reliance on Colorado River is misplaced. There, the Court was discussing a potential conflict between state and federal claims, and earlier in the same paragraph had found: "The present case clearly does not fall within the second category of abstention. While state claims are involved in the case, the state law to be applied appears to be settled. No questions bearing on state policy are presented for decision." 424 U.S. at 815, 96 S.Ct. at 1245