89 F.3d 834
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MIDDLEPORT TERMINALS, INC., Plaintiff-Appellant, Cross-Appellee,
The Shelly Company; New York Marine & General Insurance
Co., Plaintiffs-Appellees,
v.
BROWN-MINNEAPOLIS TANK & FABRICATING CO.,
Defendant-Appellee, Cross-Appellant.
 Nos. 94-3731, 94-3747.
 United States Court of Appeals, Sixth Circuit.
 June 14, 1996.
 
 Before: NELSON and SILER, Circuit Judges; WISEMAN, District Judge.*
 SILER, Circuit Judge.
 
 
 1
 Plaintiff Middleport Terminals, Inc. appeals and defendant Brown-Minneapolis Tank & Fabricating Company cross-appeals judgment for Brown in this diversity action for breach of warranties. The parties raise evidentiary issues and whether the district court properly instructed the jury. For the reasons stated herein, we affirm the judgment for Brown.
 
 I.
 
 2
 Middleport is a wholly owned subsidiary of its parent corporation, plaintiff The Shelly Company, and is insured by plaintiff New York Marine & General Insurance Company. The only plaintiff to appeal is Middleport.
 
 
 3
 Middleport is in the asphalt paving business. In August 1988, Middleport contracted with Brown to design and construct two 2.25 million gallon steel tanks in compliance with API-650[1] to store heated asphalt. Brown was only one of six subcontractors hired by Middleport to assist in the construction of the two steel tanks. Brown's responsibility was to build the tanks according to the specifications provided by Middleport. The tanks were completed, tested and accepted by Middleport on February 5, 1989.
 
 
 4
 The tanks were used for approximately seventeen months when a Middleport employee heard a loud pop and later noticed the roof of the northern tank to have dished inward. At the time of trial, Middleport had experienced no problems with the second tank which was located a few feet away from the northern tank. In its suit, Middleport claimed that the collapse of the tank's roof rafters was due to the inability of the rafters to accommodate stresses imposed by greater settlement of their support at the tank's center than at its periphery--"differential settlement." Middleport claimed Brown knew this "differential settlement" would occur but did not take it into account in the design of the tank, thus breaching warranties of merchantability and fitness. Brown blamed the collapse on the explosion of gases within the tank caused by Middleport's alteration of the tank after delivery.
 
 
 5
 The jury returned a verdict, with answers to special interrogatories, for Brown against Middleport.
 
 II.
 
 6
 When Middleport offered the testimony of Fred Alexander, a forensic structural engineer, the trial court, in response to Brown's objection, ruled that he could not discuss the findings of a computer-aided analysis or the engineering survey, both of which had been created by other persons, until a proper foundation had been laid. Middleport contends that this ruling violated Federal Rule of Evidence 703.[2]
 
 
 7
 "Decisions regarding the admissibility of expert testimony are within the discretion of the trial court and may ordinarily be reversed only for abuse of discretion." United States v. Mohney, 949 F.2d 1397, 1406 (6th Cir.1991), cert. denied, 304 U.S. 910 (1992). Thus, the trial court's ruling will not be disturbed unless it abused its discretion.
 
 
 8
 "The purpose of Rule 703 is to make available to the expert all of the kinds of things that an expert would normally rely upon in forming an opinion, without requiring that these be admissible in evidence. Under the Rule, the expert is free to give his opinion relying upon the types of data an expert would normally use in forming an opinion in his area of expertise." Mannino, 650 F.2d at 851. "The question is whether [the information relied upon] is the type of material that an expert would rely upon[.]" Id. at 853.
 
 
 9
 Middleport is correct that evidence such as the survey evidence and the computer analysis should be admissible under Rule 703. However, when the evidence was presented to the jury, Middleport failed to establish any foundation for the survey evidence or for the computer analysis. Middleport simply began questioning Alexander as to the results of the survey and the computer analysis. Even after objection and instructions from the court, Middleport failed to establish that these were the types of facts or data upon which an expert such as Alexander would normally rely as required by Rule 703.[3] If Middleport had laid the proper foundation, i.e., shown that these were the types of information upon which experts in the field normally rely, the evidence would have been admissible. Consequently, there was no abuse of discretion. Further, even if the court's ruling were erroneous, it was harmless error, as Alexander's testimony was substantially the same as was his proffered testimony.
 
 III.
 
 10
 When Middleport offered an interoffice memorandum that had been prepared by a Brown employee, the trial court, in response to Brown's objection, ruled that the memorandum was inadmissible under Federal Rule of Evidence 801(d)(2)(D)[4] as Middleport failed to first lay a proper foundation. Middleport contends the trial court's ruling violated Rule 801(d)(2)(D).
 
 
 11
 The admission of testimony and other evidence by the trial court is reviewed for an abuse of discretion. Mitroff v. Xomox Corp., 797 F.2d 271, 275 (6th Cir.1986) (citations omitted). "[A] statement of an agent or employee may be admissible against the principal (in this case [Brown] if within the scope of his agency or employment, but a proper foundation must be made for such a statement to show it was within the scope of his agency or employment." Mitroff, 797 F.2d at 276 (citations omitted). "[I]t is necessary, ..., to show, to support admissibility, that the content of the declarant's statement concerned a matter within the scope of his agency [or employment.]" Hill v. Spiegel, Inc., 708 F.2d 233, 237 (6th Cir.1983).
 
 
 12
 Here, the only information elicited from the witness regarding the memorandum was that the author and the other party referenced therein were employees of Brown and their respective positions. Middleport failed to question the witness regarding "any knowledge he had of the basis for [the statements contained in the memorandum or of the memorandum itself]." Mitroff, 797 F.2d at 276. Further, the witness was never "questioned as to the possible basis for such statements," id., or memorandum. The witness's testimony "added nothing further insofar as the basis of knowledge for the alleged statements[.]" Id. Consequently, the trial court did not abuse its discretion in disallowing the admission of the memorandum.
 
 IV.
 
 13
 Finally, Middleport contends that the jury instructions concerning express and implied warranties were incorrect and prejudicial. "The function of the reviewing court with respect to jury instructions is to satisfy itself that the instructions show no tendency to confuse or mislead the jury with respect to the applicable principles of law." Miller v. Utica Mill Specialty Mach. Co., 731 F.2d 305, 307 (6th Cir.1984) (per curiam) (citation omitted). "When considering the correctness and adequacy of a charge to the jury, [this court] must review the jury instructions as a whole." Clarksville-Montgomery County Sch. Sys. v. United States Gypsum Co., 925 F.2d 993, 1003 (6th Cir.1991) (citation omitted). "Each instruction must be considered in connection with others of the series referring to the same subject." Id. (citation omitted). "Even where a portion of the charge is erroneous, if the point is explained and corrected in other parts of the charge so that the jury will not be misled, the jury's verdict should be affirmed." Id. at 1003-04 (citation omitted).
 
 The court instructed the jury that the
 
 14
 Warranties, whether express or implied, shall be construed as consistent with each other and as cumulative. But if such construction is unreasonable, the intention of the parties shall determine which warranty is dominant.
 
 
 15
 That may very well have been an erroneous instruction, because in Ohio, the implied warranty of merchantability cannot be overridden by an express warranty unless the express warranty specifically refers to merchantability. See O.R.C. § 1302.29; Morrison v. DeVore Trucking, Inc., 68 Ohio App.2d 140, 143 (1980). However, we need not decide that issue at this time. Although the jury found, in response to interrogatories, that the express warranty contained within the contract was dominant over the implied warranty of merchantability, it further found that the storage tanks were fit for the particular purpose.[5] Thus, any claimed error is harmless as the jury instructions did not have a tendency to confuse or mislead the jury. The answers to the interrogatories submitted to the jury reveal they found the tanks were fit for their particular purpose and the implied warranty of merchantability, if any, had not been breached. Thus, Middleport was not prejudiced by the instruction. If error was committed, it was harmless.
 
 V.
 
 16
 This court need not address Brown's cross-appeal as the judgment for Brown is AFFIRMED.
 
 
 
 *
 The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 API-650 is Standard 650 of the American Petroleum Institute which sets forth the requirements and specifications for the construction of the tank shells. API-650 is not unique to heated asphalt tanks. Tanks constructed under Standard 650 provide storage for other products, including oil and gas
 
 
 [2]
 Federal Rule of Evidence 703 provides:
 The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts and data need not be admissible in evidence.
 
 
 [3]
 Although Middleport's counsel did state, at side bar, that this was the type of information experts normally relied upon, he never asked this question of Alexander until later during Alexander's testimony on avowal outside the presence of the jury and there is no evidence in the record that Middleport renewed its request to present the evidence to the jury after the avowal
 
 
 [4]
 Federal Rule of Evidence 801(d)(2)(D) provides:
 (d) Statements which are not hearsay. A statement is not hearsay if--
 (2) Admissions by a party-opponent. The statement is offered against a party and is ... (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship....
 
 
 [5]
 The interrogatories submitted to and answered by the jury were, in pertinent part, as follows:
 Interrogatory No. 7: Has the plaintiff proven by a preponderance of the evidence that the defendant had reason to know that the plaintiff was relying on the defendant to furnish tanks which would perform the intended use?
 The answer was "YES."
 Interrogatory No. 8: Has the plaintiff proven by a preponderance of the evidence that the plaintiff did in fact rely on the defendants' skill and judgment in furnishing the tanks?
 The answer was "YES."
 Interrogatory No. 9: If your answers to Interrogatories 6, 7 and 8 were all yes: Has the plaintiff proven by a preponderance of the evidence that at the time the tank was completed, it was not fit for use as an asphalt storage tank?
 The answer was "NO."