Dr. Lani FORD and Dr. William C. Ford, Plaintiffs-Appellees,

v.

Chancellor Roy S. NICKS, individually and in his official capacity as Chief Executive Officer, State of Tennessee Board of Regents; Governor Ray Blanton; C.C. Bond; Wayne Brown; Sam Ingram; Kenneth Ezell; Edward S. Porter; Dale Glover; James H. Jones, Jr.; Charles J. Liner; Johnella H. Martin; Ella V. Ross; J. Frank Taylor; J. Howard Warf; David White; and Dwight Henry, individually and in their official capacities as members of the Board of Regents of the State of Tennessee; M.G. Scarlett, President, Middle Tennessee State University; and Middle Tennessee State University, Defendants-Appellants.

No. 83–5330.

United States Court of Appeals, Sixth Circuit.

Argued May 1, 1984.

Decided Aug. 23, 1984.

Rehearing Denied Sept. 20, 1984.

---

William M. Leech, Jr., Atty. Gen., State of Tenn., William B. Hubbard, Chief Deputy Atty. Gen., R. Stephen Doughty, argued, Deputy Atty. Gen., Nashville, Tenn., for defendants-appellants.

Charles Hampton White, argued, Cornelius, Collins, Higgins & White, William Prentice Cooper, Nashville, Tenn., for plaintiffs-appellees.

Before JONES and CONTIE, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

On April 26, 1977, Dr. Lani Ford and Dr. William C. Ford filed suit in federal district court against Middle Tennessee State University, the school's president, Dr. M.G. Scarlett, and the Board of Regents of the State University and Community College System of Tennessee and its members (collectively MTSU), contending that their terminations from the teaching staff at MTSU constituted employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

Lani Ford alleged that her dismissal[1] after the 1971–1972 school year was due to sex discrimination as prohibited by 42 U.S.C. § 2000e–2 & –3. William C. Ford contended his dismissal at the end of the 1973–1974 school year was in retaliation for protesting against MTSU's employment practices and assisting his wife Lani in her battle for reinstatement after her termination, in violation of 42 U.S.C. § 2000e–3. After a two-day bench trial, on January 14 and 15, 1981, the district judge found MTSU had violated Title VII in both cases. He awarded Lani and William C. Ford back pay, reinstatement to their former positions at MTSU, and full tenure rights. MTSU appealed.

In April, 1970, William C. Ford, who was completing work on his doctorate in business education at Michigan State University, met with Dr. E.W. Midgett, chairman of MTSU's Department of Business Education and Office Management, to discuss his possible future employment as an instructor at MTSU. Midgett, who was aware that Lani Ford was also working on her doctorate in secondary education, had previously informed William C. Ford that the university had positions available for both William and Lani. At the meeting, William C. Ford entered into a contract with MTSU, establishing that he would be an associate professor for the 1970–1971 school year at a salary of $14,400. Midgett thereafter assured William C. Ford that he was attempting to locate a suitable position for Lani Ford, and that since four positions were available in the Sociology Department, his search most likely would be successful.

In June, 1970, the Fords moved to Murfreesboro, Tennessee, near the MTSU campus. Lani Ford had not as yet completed the requirements for her doctorate. She met with Dr. Ralph White, chairman of the Department of Education and Library Science, about a possible position in that department. He informed her that she could not become an instructor in the department since she had not completed her doctoral degree work. Later, in October, 1970, William C. Ford spoke with White again about Lani becoming a member of the department after she finished work on her terminal degree. White indicated that he did not favor the practice of hiring the spouses of faculty personnel employed by MTSU.

In December, 1970, after Lani Ford had completed all of the course requirements for her Ph.D., she contacted Dr. Delmar Pockat, dean at MTSU, about her future employment prospects. Pockat informed Lani Ford that if employed, her salary and status at the university would be restricted since she was the spouse of a presently employed faculty member. After subsequently meeting again with White, she was informed that a position as a "special teacher" was available, but that the position carried only a small salary and no faculty rank.[2] She rejected this offer.

Meanwhile, William C. Ford performed in a satisfactory manner during the 1970–1971 school year. In an annual review of his performance as an associated professor, Midgett declared that William C. Ford had made a valuable contribution to the university and its students. At the same time Midgett referred to the university's treatment of Lani Ford as discouraging and expressed his concern about the discriminatory treatment of husband and wife teams by the department. William C. Ford was reappointed to teach the 1971–1972 school year.

Both Lani and William C. Ford continued in their efforts to find employment for Lani. They wrote M.G. Scarlett, president of MTSU, informing him about the statements made by White, and concerning their frustrations in locating employment at MTSU for Lani Ford, despite earlier representations by Midgett. Scarlett did not respond to the letter.

After she received her degree, Lani Ford met with Scarlett in June, 1971. Scarlett

---

**1.** Both terminations resulted from MTSU's refusal to review plaintiffs' contracts and are in context regarded as tantamount to dismissals.

**2.** The position apparently roughly equated that of administrative secretary.

informed her that he had recently become aware of certain Peabody funds available to hire her. He declared, however, that the funds were not permanent. On August 17, 1971, MTSU tendered to Lani Ford a contract of employment as an assistant professor in the Department of Education and Library Science for the 1971–1972 school year at a salary of $11,000. At the same time she accepted the position, Lani Ford held a Ph.D. in secondary education, and had three and one-half years of teaching experience in the field.

Lani Ford performed satisfactorily, according to evaluations by White, during her first semester at MTSU. In a variety of courses in education, she taught sophomores, juniors, and graduate students. During her second semester Lani Ford also satisfactorily performed, taking part in the university's student teacher program as well as teaching classes. In his evaluation of her work, however, White stated that he would be reluctant to hire someone with Lani Ford's qualifications except on a part-time basis. She was not rehired at the end of the 1971–1972 school year. At about the same time, John Trufant, who had held a regular faculty position, resigned from the Department of Education and Library Science. Lani Ford was qualified to teach many of the courses formerly taught by Trufant. Later, on August 8, 1972, John Wagner, who had taught freshman courses and student teachers also resigned. Lani Ford attempted to speak with Scarlett about each vacancy, but was unable to make telephone contact. She was later informed by Scarlett that each opening would be filled by one of the eight newly hired professors. This group consisted of seven men and one woman. Douglas H. Knox, who lacked a doctorate, was subsequently paid from the Peabody funds previously used to compensate Lani Ford. Knox taught primarily freshman courses. Knox, after completing the 1972–1973 school year, was reappointed.

In the Department of Business and Education, Midgett was replaced by H. Dalton Drennan as chairman in the summer of 1971. Shortly thereafter, William C. Ford submitted in writing certain suggestions for improving the department, including the hiring of a female faculty member. He was called into Drennan's office for an evaluation. Drennan together with Dean Firman Cunningham of the Economics Department informed Ford that certain student criticism had surfaced about his performance as a professor. He later responded to the charges in writing, declaring he would attempt to correct the problem. Nevertheless, in early 1972 Drennan told him that he, Ford, should begin looking for employment elsewhere.

In the fall of 1972, William C. Ford assisted his wife Lani in filing a complaint with the Equal Employment Opportunity Commission (EEOC) concerning her dismissal. In November, 1972, Ford was called to the office of Dean Cunningham, where he was grilled about the filing of certain "grievances" by MTSU faculty members. Cunningham told Ford that if he had any complaints about MTSU he should follow correct grievance procedures.

In the spring of 1973, Drennan, while recommending Ford be rehired for the 1973–1974 school year urged that he receive only the minimum wage increase possible. Ford thereafter received only a $120 increase, one of the lowest in the department, and he appealed this decision to Alex Simon, Cunningham's successor. Simon refused to reverse the decision. Several days later Ford was informed that he would not be rehired at the end of the 1973–1974 school year. Upon receiving this news, Ford filed a complaint with EEOC.

After his dismissal from MTSU, Ford attempted to secure unemployment benefits from the state of Tennessee. Though MTSU had failed to give him any explanation for his termination, the university contested his claim. Ford, however, ultimately prevailed and received benefits. At the same time, he filed a number of applications at other educational institutions in an effort to locate employment without success. In October, 1974, Ford successfully passed the state real estate licensing exam-

ination and began work at a small local real estate company. He thereafter formed his own moderately successful real estate partnership.

Lani Ford, after her dismissal, attempted to locate comparable employment at a number of other educational institutions.[3] When her job search was unsuccessful, she joined her husband as a partner in the real estate business. In 1980 she secured employment with the Tennessee Energy Authority.

In presenting their case at trial, the Fords introduced population statistics showing that despite the fact that females outnumbered males in Murfreesboro, Tennessee, MTSU had but six female instructors in its entire education department, as compared with thirty-four or thirty-five male instructors. This evidence, they argued, bolstered their position that Lani Ford's dismissal was due to sex discrimination.

In its defense at trial, MTSU argued that it had dismissed Lani Ford because she lacked the requisite requirements necessary for the university's Department of Education and Library Science. Since her terminal degree was in secondary education, MTSU contended, a field that was becoming less popular with students, her services were not needed at the time of her dismissal. MTSU also alleged that insufficient funds were available to keep Lani Ford as a member of the faculty.

At the close of all the evidence the district judge in a memorandum opinion dated May 11, 1982, recorded thorough and concise findings of fact and conclusions of law. He determined that Lani Ford had presented a prima facie showing of discrimination in violation of Title VII. Turning to MTSU's burden of proof the district judge declared that:

> Although an employer is not required to prove the absence of a discriminatory motive, the employer is required to establish non-discriminatory reasons by a pre-

ponderance of the evidence. *Whiting v. Jackson State University*, 606 [616] F.2d 116 (5th Cir.1980). Legally sufficient evidence is needed before the prima facie case of Dr. Lani Ford can be rebutted. *Berdine* [sic] *v. Texas Department of Community Affairs*, 608 F.2d 563, 567 (E.D.La.1980) [sic]. Applying these tests to the reasons advanced by Dr. White on behalf of the defendants, the Court concludes that MTSU's failure to re-employ Dr. Lani Ford at the end of the 1972–73 scjpp; uear [sic] was the result of sex discrimination practiced against her in violation of 42 U.S.C. § 2000e–2.

The district judge also determined that William C. Ford had proven a violation of Title VII by a preponderance of the evidence in the record. The district judge, having found a violation in both the case of Lani and William C. Ford, ordered the Fords reinstated.

In determining back pay the district judge ordered MTSU to calculate the salary the Fords would have received from MTSU, with appropriate salary increases. From this amount, Lani Ford subtracted the salary she would not have received during her pregnancy, amounts earned as a partner with her husband in their real estate business, and her salary earned while working for the Tennessee Energy Authority. William C. Ford subtracted the amounts received from his real estate activities. In a memorandum opinion dated April 26, 1983, the district court, based on the evidence before it, awarded Lani $136,342.36 and William C. Ford $86,432.76. At the same time he awarded both tenure.

On appeal MTSU initially argues that the district judge committed reversible error by shifting the burden of persuasion contrary to the dictates of *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). By requiring MTSU to prove by a preponderance of the evidence legitimate nondiscriminatory reasons for terminating Lani Ford, it

---

**3.** Lani Ford had become pregnant during the 1972–1973 school year, but immediately began seeking employment thereafter.

contends, the district judge impermissibly shifted the burden of persuasion from Lani Ford to MTSU. We agree.

In *Burdine*, the Supreme Court described the appropriate allocation of the burdens of proof in a Title VII lawsuit. *Id.* at 253, 101 S.Ct. at 1093, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The Court declared that a plaintiff is initially required to establish a prima facie case of discrimination. If successful, the Court continued, the burden of production shifts to the employer to articulate legitimate nondiscriminatory reasons for the dismissal. Such a showing is satisfied, the Court explained, when an employer presents "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine*, 450 U.S. at 257, 101 S.Ct. at 1096. The Court held that where the Fifth Circuit had required an employer to show by a preponderance of the evidence such legitimate nondiscriminatory reasons for termination, it had impermissibly shifted the burden of persuasion to the employer.

 In the case at bar, the district judge committed just this error in determining that Lani Ford had been the victim of sex discrimination. After finding that Ford had made out a prima facie case of discrimination, the district judge, applying the Fifth Circuit rule, disapproved by the Supreme Court in *Burdine*, carefully discredited in great detail each of MTSU's proffered justifications for dismissing Lani Ford. Determining that such justifications did not meet MTSU's requisite burden of proof, the district judge held that MTSU had committed a violation of Title VII. Since we conclude that this approach is identical to the approach of the Fifth Circuit, disapproved by the Supreme Court in *Burdine*, and since this error by the district judge directly leads to the ultimate finding of liability, we agree with MTSU that Lani Ford's case must be remanded to the district court for a new trial. *Burdine, supra; Brooks v. Ashtabula County Welfare Dept.*, 717 F.2d 263 (6th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1687, 80 L.Ed.2d 160 (1984).[4]

MTSU next contends that the district judge abused his discretion in his calculation of back pay award for William C. Ford, and by reinstating him to his former position. In particular, MTSU urges, the district judge failed to permit them to disprove amounts claimed by Ford, and did not correctly reduce the award by the amounts actually earned by Ford after his termination. Further, MTSU contends that because a long period of time has passed since Ford was terminated at MTSU, he no longer is qualified to teach at the institution. We disagree.

 It is well settled that a district court may award reinstatement and full back pay to the victim of employment discrimination in violation of Title VII. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614 (6th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984). In order to encourage the goals of Title VII, district courts are given broad latitude to fashion remedies that make a victim whole by restoring him, as nearly as possible, to the position he would have been in had the discrimination not occurred. *Albemarle, supra* 422 U.S. at 422, 95 S.Ct. at 2373; *Rasimas, supra* at 626.

---

**4.** Relying on *Hazelwood School District v. United States*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977), MTSU contends that the district judge committed reversible error by considering general population statistics introduced by the Fords comparing the number of female instructors at MTSU with the number of females in Murfreesboro. Since, however, the Fords dropped their claim that a pattern of disparate treatment of women existed at MTSU, and since there was plainly other overwhelming evidence in the record to support the district judge's determination that MTSU had committed a violation of Title VII in terminating William C. Ford, we think that the submission of these statistics was harmless error. At the new trial, the court may be well advised to reconsider the admissibility of receiving evidence in this area.

■■ In the present case, the district judge ordered MTSU to submit salary schedules, including appropriate salary increases, applicable to William C. Ford from the time of his dismissal to the present. From this amount, ultimately supplied by MTSU, the court subtracted those amounts subsequently earned by Ford and made other appropriate adjustments. MTSU, though given the opportunity, presented nothing to disprove this amount. At the same time, despite Ford's statement that he still wished to return to MTSU and had no reservations about his capabilities to satisfactorily perform, MTSU presented nothing indicating that Ford was no longer able to satisfactorily perform as an instructor at MTSU. We hold, therefore, that the district judge did not abuse his discretion in calculating back pay for Ford and reinstating him to his rightful position at MTSU. *Rasimas, supra* at 626–27.[5]

The final issue raised by MTSU is whether the district judge properly awarded William C. Ford tenure at MTSU as part of his remedial order. MTSU contends that since William C. Ford had not satisfactorily completed five years of employment at MTSU, the understood probationary period before tenure, as described to him at the time of his employment, and since MTSU officials did not have the opportunity to specifically evaluate Ford for tenure purposes, the grant of tenure was improper. Federal courts, MTSU continues, have uniformly refused to invade the tenure process where the university has not had the occasion to initially evaluate the applicant for tenure. *See Gurmankin v. Costanzo,* 626 F.2d 1115, 1125 (3d Cir.1980), *cert. denied,* 450 U.S. 923, 101 S.Ct. 1375, 67 L.Ed.2d 352 (1981); *Powell v. Syracuse University,* 580 F.2d 1150, 1154 (2d Cir.), *cert. denied,* 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978); *Faro v. NYU,* 502 F.2d 1229, 1231 (2d Cir.1974). *See also Sweezy v. New Hampshire,* 354 U.S. 234, 263, 77 S.Ct.

1203, 1218, 1 L.Ed.2d 1311 (1957) (Frankfurter, J., concurring) (freedom in academic decision making produces important societal benefits, judiciary should be reluctant to intrude into the process). As a result, MTSU urges, Ford should not have been granted tenure.

■ While we recognize that federal courts have generally deferred to the decisions of college and university officials in whether to grant tenure, particularly where the educational institution has not as yet had the opportunity to initially evaluate the credentials and overall performance of a tenure applicant, we need not address the issue in this case. Tennessee law, existing at the time of this case, automatically granted tenure to any professor at a state university who successfully completed five years of employment at the university. *State ex rel. Chapdelaine v. Torrence,* 532 S.W.2d 542, 546 (Tenn.1975), *cert. denied,* 425 U.S. 953, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976) (interpreting Tenn.Code Ann. § 49–1421 (1961), repealed by Tenn.Code Ann. § 49–8–301 (1976)). We therefore conclude that the district judge did not abuse his discretion by awarding William C. Ford tenure, restoring him to the position he would have been in but for the illegal discrimination by MTSU. *Albemarle, supra; Rasimus, supra.*

For the above reasons we remand Lani Ford's case to the district court for retrial. We affirm the district court's judgment in the case of William C. Ford *in toto.*

---

5. MTSU argues alternatively that William C. Ford failed to mitigate damages by seeking comparable employment after his dismissal. Such an argument is simply not factually supportable. William C. Ford made attempts to locate faculty employment elsewhere without success. Such efforts were plainly sufficient to constitute reasonable efforts to mitigate damages. *Rasimas, supra.*