Ann Nadia TYE, Plaintiff-Appellant, Cross-Appellee,

v.

**BOARD OF EDUCATION OF the POLARIS JOINT VOCATIONAL SCHOOL DISTRICT, et al., Defendants-Appellees, Cross-Appellants.**

Nos. 85–3631, 85–3941.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 3, 1986.

Decided Feb. 13, 1987.

Rehearing and Rehearing En Banc Denied April 15, 1987.

**316**

Cynthia Estlund, argued, Gary Sasso, Bredhoff & Kaiser, Washington, D.C., for plaintiff-appellant, cross-appellee.

Robert D. Kehoe, Cleveland, Ohio, for defendants-appellees, cross-appellants.

Before MERRITT, GUY and NORRIS, Circuit Judges.

MERRITT, Circuit Judge.

Ann Tye, plaintiff-appellant, appeals from a judgment in favor of defendant Polaris Board of Education and other individual defendants in her Title VII sex discrimination suit. In this appeal, Ms. Tye contends that the trial court erred in law and fact by finding the defendants' proof sufficient to rebut both her *prima facie* case and her proof of pretext. The Board cross-appeals the denial of attorney's fees and restrictions placed on pre-trial discovery. For the reasons stated below, we now reverse and remand.

Ann Tye was employed by the Board of Education of the Polaris Joint Vocational School District as a vocational guidance counselor for three years from September 1979 through June 1982. Ms. Tye's employment for this period was obtained under a series of one-year limited contracts. In March, 1982, fiscal constraints forced the Board to eliminate a number of staff positions throughout the district. As part of this cutback, two of the four vocational guidance counselor positions at Ms. Tye's school were slated for elimination. One of these positions was eliminated by attrition, and the other by non-renewal of appellant's contract. One of the two surviving positions was filled by Mr. Ernest Mason, a former coworker of

the appellant. This action is based on the decision of Dr. Richard Mueller, the school superintendent, to recommend renewal of Mr. Mason's contract instead of Ms. Tye's. In this context, non-renewal of a contract is tantamount to a dismissal and constitutes an actionable employment decision under Title VII. *Ford v. Nicks,* 741 F.2d 858, 860 n. 1 (6th Cir.1984), *cert. denied,* 469 U.S. 1216, 105 S.Ct. 1195, 84 L.Ed.2d 340 (1985).

The proper procedure for adjudication of Title VII claims is set forth by the Supreme Court cases of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). On appeal, we review factual findings of the District Court under the "clearly erroneous" standard set forth in Rule 52(a) of the Federal Rules of Civil Procedure. *See Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518. *McDonnell Douglas* and *Burdine* establish a three-part structure of shifting burdens of production:

1. To prove a *prima facie* case, "[t]he plaintiff must prove by a proponderance [sic] of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Burdine,* 450

U.S. at 253, 101 S.Ct. at 1093. One way for the plaintiff to carry this burden is to prove the elements of a hypothetical case posed in *McDonnell Douglas:* "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and that the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S. at 802, 93 S.Ct. at 1824.

2. If the plaintiff carries this burden, the defendant must then "articulate some legitimate, nondiscriminatory reason for the employee's rejection." 411 U.S. at 802, 93 S.Ct. at 1824.

3. If the defendant carries this burden, then the plaintiff must show that the defendant's stated reason was pretextual. 411 U.S. at 804, 93 S.Ct. at 1825.

The basic issue here is whether an employer may prevail when he stipulates to untrue reasons given to rebut a *prima facie* case and then refuses to give any coherent and understandable reason—subjective or objective—for an employment decision covered by Title VII.

■ Since it was obvious that Ms. Tye established a *prima facie* case,[1] the trial

---

1. Appellees' argue that because Ms. Tye was terminated as part of a reduction in force, this circuit's decision in *LaGrant v. Gulf & Western Manufacturing Co.,* 748 F.2d 1087 (6th Cir.1984), requires her to present additional evidence in her *prima facie* case. *LaGrant* holds that an ADEA plaintiff who cannot prove that he was replaced by a younger person in a reorganization or reduction in force, must present in his *prima facie* case some "direct, circumstantial, or statistical evidence that age was a factor in his termination." 748 F.2d at 1091. However, because of the differing factual and statutory bases presented by the two cases, it is clear that the *LaGrant* holding is inapposite to Ms. Tye's case.

As this circuit has previously noted, important differences exist between the type of discrimination actionable under Title VII and age discrimination under the ADEA:

The progression of age is a universal human process. In the very nature of the problem, it is apparent in the usual case, absent any discriminatory intent, discharged employees will

more often than not be replaced by those younger than they, for older employees are constantly moving out of the labor market, while younger ones move in. This factor of progression and replacement is not necessarily involved in cases involving the immutable characteristics of race, sex, and national origin.

*Laugesen v. Anaconda Co.,* 510 F.2d 307, 313 n. 4 (6th Cir.1975). Because of these differences, cases interpreting the procedural framework under one statute are not automatically applicable to the other. *See LaGrant v. Gulf & Western Manufacturing Co.,* 748 F.2d 1087, 1090 (6th Cir.1984) (citing cases that reject strict application of *McDonnell Douglas* to ADEA claims).

Furthermore, when the *LaGrant* opinion is examined closely, it is apparent that it is factually inapposite as well. The plaintiff in *LaGrant* failed to prove an essential element of his *prima facie* case, namely, that he was replaced by a younger person. 748 F.2d at 1090. In this case, Ms. Tye has conclusively established that she

court focused solely on the defendant's reasons for the employment action. Appendix at 28. In order to meet its burden at this point the Board had to produce admissible evidence that Mr. Mason was preferred for a legitimate, nondiscriminatory reason. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The purpose of this stage of the proceeding is two-fold: it is necessary to rebut the inference of discrimination that attaches upon proof of a *prima facie* case, and it narrows the range of explanations that the plaintiff must disprove in order to show pretext. *Burdine,* 450 U.S. at 258, 101 S.Ct. at 1096; *Rowe v. Cleveland Pneumatic Co.,* 690 F.2d 88, 96–97 (6th Cir. 1982). Thus, while this burden is only one of production and not persuasion, it is elementary that the evidence produced must be clear, reasonably specific, and legally sufficient to justify a judgment for the defendant if not disproved by the plaintiff. *Burdine,* 450 U.S. at 255, 258, 101 S.Ct. at 1094, 1096. If the employer fails to carry this burden, the plaintiff is entitled to judgment as a matter of law. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094.

If the defendant successfully articulates a legitimate reason, however, the presumption of discrimination imposed by *McDonnell Douglas* disappears. *See U.S. Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). At this stage, a Title VII trial is procedurally indistinguishable from any other civil trial. The shifting burdens have run their course, and the trial court must now turn its attention to the ultimate question of fact: Did the defendant intentionally discriminate against the plaintiff? At this last stage, sufficiency of the parties' proof as to the intermediate *McDonnell Douglas* burdens is usually no longer an issue. *Aikens,* 460 U.S. at 713–14, 103 S.Ct. at 1480–81. Yet, the trial court's decisions regarding these intermediate burdens cannot be shielded from appellate review simply because the court ignored its error and proceeded with the proof. An unrebutted *prima facie* case entitles the

plaintiff to judgment as a matter of law, and a trial court's failure to grant such relief may be redressed on appeal. With this procedural framework in mind, we now turn to the issues presented by this case.

Ms. Tye contends that the reasons proffered by the Board for her non-renewal were insufficient to meet the intermediate burden described above. Reviewing the record as a whole, we find that the District Court was correct in finding the defendants' proof sufficient. To meet their burden, the defendants submitted a list of ten reasons for the decision:

1. A statutory right to non-renew limited contracts such as Ms. Tye's;

2. The collective bargaining agreement covering Ms. Tye's employment allowed for non-renewal;

3. Declining enrollment;

4. Fiscal cutbacks;

5. Multiple certification of staff;

6. Staff diversity and complement;

7. Employee demeanor and attitude;

8. Employee interaction with other faculty;

9. Program changes at the school;

10. Superintendent Richard Mueller's subjective feelings and impressions.

Appendix at 219–20.

Since the "employment decision" under review here is the choice to renew Mr. Mason instead of Ms. Tye, it is clear that reasons one through four in the list above are irrelevant. These reasons explain only why staff reductions were made, not why the plaintiff was singled out. Evidence offered to meet the intermediate burden of production must articulate a legitimate, non-discriminatory reason "why someone else was preferred." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. Since these four reasons explain only why staff reductions were made and not why Ms. Tye was chosen to go, they are legally insufficient to rebut a *prima facie* case of discrimination in this context.

---

was replaced by a male, Mr. Ernest Mason. Thus the circumstances that led the *LaGrant*

court to add an additional element to the plaintiff's *prima facie* case are not present here.

■ Before considering the other six reasons on the list, it is important to note that the list itself was introduced into evidence as part of a stipulation. Appendix at 216–20. Later in the trial, Dr. Richard Mueller completely contradicted all of these reasons.[2] Since Dr. Mueller had unilateral authority over recommendations for non-renewal, it is obvious from his testimony that these stipulated reasons were in fact untrue. Furthermore, Dr. Mueller's statement that he did what he thought was best for Polaris[3] is a subjective reason which is legally insufficient to rebut Ms. Tye's *prima facie* case. *Rowe*, 690 F.2d at 96–97. Therefore, if the stipulations had not been introduced and Dr. Mueller's testimony alone had been used to meet the defendant's intermediate burden, Ms. Tye would have been entitled to judgment on an unrebutted *prima facie* case.

■ Since the stipulations *were* admitted into evidence, however, the *McDonnell Douglas* burdens vanished before the time Dr. Mueller testified. Chronologically, the contrary testimony could only support the plaintiff's case on pretext, and could not negate the burden of production which the defendant met previously. It is clear that *Burdine* allows the defendant to satisfy his intermediate burden by offering an untrue reason for the decision. *Burdine*, 450 U.S. at 257–58, 101 S.Ct. at 1095–96. If an untrue explanation is offered, so the reasoning goes, the plaintiff may prove pretext by attacking the employer's motive for offering an untrue reason. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. Accordingly, we find that defendants' intermediate burden was met when reasons four through nine were admitted into evidence.

■ A Title VII trial does not end, however, when the defendant meets his intermediate burden: the plaintiff next has an opportunity to show that the proffered reasons are a pretext for discrimination. Evidence introduced at the intermediate stage is taken on its face, while the ultimate question of intentional discrimination can only be answered by ascertaining the truth of the proffered reasons. In *Burdine*, the Supreme Court described the plaintiff's burden at this third stage of a Title VII trial:

> The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer *or indirectly by showing that the employer's proffered explanation is unworthy of credence.*

*Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095 (citation omitted) (emphasis supplied). Thus, the plaintiff may indirectly prove in-

---

**2.** Dr. Mueller testified that he did not actually have a reason for recommending Ms. Tye's non-renewal in April, 1982, and that the stipulated reasons were "reconstructed" specifically for this litigation:

> Q You are telling the Court that you have no reasons for recommending Tye's non-renewal in April of 1982?
> A In April, 1982, under the Ohio Revised Code, I did not have to give reasons or make up reasons, or write them down, so I cannot testify, since I am under oath, to any reasons that existed in April of 1982, because I did not have to, *nor did I have a reason in April of 1982.*
> Q So you really did not have any specific reason in mind when you recommended Tye's non-renewal?

> A *That is what I testified to,* although the way up to a point in time until I was required in Federal Court to give consideration or try to reconstruct under the Ohio Revised Code, and I have given testimony of subjective reconstructed considerations that I believe that, as a human being, I gave to the best of my ability.

Appendix at 242 (cross-examination of Dr. Richard Mueller) (emphasis supplied). Dr. Mueller's subsequent testimony contradicted even these reconstructed reasons. Dr. Mueller denied any attempt to compare Ms. Tye to Mr. Mason on qualifications (Appendix at 419), personnel files (Appendix at 417), supervisor's assessments (Appendix at 407), or "subjective" factors (Appendix at 247–48).

**3.** Appendix at 434.

tentional discrimination by showing that the defendants' justifications are untrue and therefore must be a pretext. Although the District Court's finding of no pretext in Ms. Tye's case must be accorded deference as a finding of fact, it may be overturned on appeal when it is based on contradictory and evasive testimony:

> Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it. Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination.

*Anderson v. City of Bessemer City,* 470 U.S. at 575, 105 S.Ct. at 1512.

Under the formulation of the "clearly erroneous" rule announced in *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), the reviewing court must be left with a "definite and firm conviction that a mistake has been committed." We are so convinced in this case. The individual whose state of mind is at issue here, Dr. Richard Mueller, clearly stated that he had no specific reason for selecting Ms. Tye for non-renewal in April, 1982. Appendix at 242. He testified that he made no attempt to compare Ms. Tye to her co-workers on *any* basis prior to selecting her for nonrenewal. Appendix at 434. Dr. Mueller specifically disavowed any comparison based on qualifications (Appendix at 419), personnel files (Appendix at 417), supervisor's assessments (Appendix at 407), or "subjective" factors (Appendix at 247–48).

Appellees cite the decision of this circuit in *Grano v. Department of Development of City of Columbus,* 699 F.2d 836 (6th Cir.1983), to support the action taken by Dr. Mueller. *Grano,* however, is distinguishable on its facts. In *Grano,* a male employee was selected for promotion over a female who had equal objective qualifications. The employer, who was familiar with the plaintiff's work, did not interview her and based his decision solely on his subjective assessment of her qualifications. In the instant case, Dr. Mueller was not Ms. Tye's immediate supervisor and did not have the personal knowledge possessed by the decisionmaker in *Grano.* Here, the defendant could have obtained this information by consulting the personnel files or Ms. Tye's supervisor, Mr. Kenneth Collier. He chose to do neither. Subjective reasons are sufficient if they result from investigation into the employee's character and performance, but preferences cannot be sufficient if they simply emanate from the subconscious of the decisionmaker without any specific basis.

The District Court found that Dr. Mueller non-renewed Ms. Tye "without a thought process" because he was relying on a state statute [4] that allowed him to take such action without providing notice to the employee. Whatever the effect of the state statute, it is impossible for Dr. Mueller to have chosen Mason over Tye without any reason whatever. Dr. Mueller did not flip a coin or draw lots—he made a choice. The comparison may have been subconscious and based on intangible factors, but it must have occurred.

Where a decisionmaker does not possess any information on which to choose between two individuals, it is well advised for him to gather information from whatever sources are available. Where no such attempt is made, and the employer gives evasive and contradictory testimony regarding the choice, he runs the risk that a Title VII plaintiff will be able to prove pretext. Ms. Tye achieved precisely that by disproving all of the defendants' proffered reasons. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. Therefore, the District Court should have entered judgment for Ms. Tye in this case.

■ Since we hold that Ms. Tye was indeed the victim of impermissible discrimination, it is unnecessary to consider the defendants' cross-appeal for attorney's fees. We also dismiss defendants' eviden-

4. Ohio Rev. Code Ann. 3319.11 (1985).

tiary claim regarding restricted discovery on the issue of Ms. Tye's motivation. The fact that a union encourages one of its members to vindicate her rights is not material where it is clear that her rights were indeed violated.

In light of the foregoing, we reverse the judgment below and remand to the District Court for such relief as may be appropriate in this case.

NORRIS, Circuit Judge, dissenting.

In my view, this appeal should be resolved by reference to our opinion in *LaGrant v. Gulf & Western*, 748 F.2d 1087 (6th Cir.1984). Analysis of and adherence to the rationale underlying that opinion leads to the inescapable conclusion that Ms. Tye did not make out a *prima facie* case.

In this case and in *LaGrant*, there was a reduction in force with the plaintiff in both having been laid off and complaining that the decision to retain another specific employee was the product of discrimination. In each case, the plaintiff attempted to establish a *prima facie* case by showing (1) membership in the protected class, (2) discharge, (3) qualification for the position, and (4) replacement by a person who was younger or a member of the opposite sex.

In *LaGrant*, we held that this *McDonnell Douglas* four-step progression to a *prima facie* case, while appropriate in the usual termination and replacement situation where no position is eliminated and the position left open by the plaintiff's discharge is filled by another, is not applicable in a reduction in force situation since the plaintiff is not replaced. Thus, in a reduction in force situation, other evidence must be substituted for the fourth element (replacement) in order for there to be sufficient circumstantial evidence from which an inference of discrimination can be drawn, and a *prima facie* case made out.

The rationale of *LaGrant* is applicable here since we are confronted with a similar evidentiary consideration. The ultimate fact to be proved in discrimination cases is intentional discrimination, and direct evidence of that ultimate fact is rarely available. The evidentiary litany of *McDonnell Douglas* and its progeny recognizes the reality that proof of intentional discrimination will almost always have to depend upon circumstantial evidence. The *prima facie* case stage of the litany is a way of measuring the quality of circumstantial evidence that is required to raise an inference of intentional discrimination that is strong enough to go to a jury (*i.e.*, that would survive a motion for summary judgment or for directed verdict). *LaGrant* speaks to the sufficiency of circumstantial evidence required to raise an inference of intentional discrimination, in the context of a reduction in force, as distinguished from termination and replacement.

In *LaGrant*, this court correctly perceived the evidentiary framework of reduction in forces cases. In the termination and replacement situation, when a woman is replaced by a man, that fact, in concert with a showing that (1) she was a member of the protected class, (2) was discharged, and (3) was qualified, is sufficient to ground an inference of discriminatory treatment. By contrast, when, due to conceded economic necessity, one of two positions (one held by a man, the other by a woman) is eliminated, and the male is retained and the woman is terminated, the *LaGrant* rationale says that these reduction in force circumstances do not raise an inference of intentional discrimination. The reason for the distinction is apparent; the two situations are vastly different, qualitatively. It is the replacement of a woman by a man that is the suspect circumstantial evidence; that exercise both disfavors the woman and prefers the man. By contrast, when there is a reduction in force, only the act of disfavor is present; the man simply retains the status he already had. While one might argue that retaining the man also amounts to preferential conduct, that argument was rejected in *LaGrant* to the extent that retention in concert with termination was deemed not to be circumstantial evidence of intentional discrimination, in comparison with the combination of replacement and termination, which will

ground a reasonable inference of intentional discrimination, when the other *McDonnell Douglas* factors are also present.

I am unpersuaded by the distinction attempted to be drawn between this case and *LaGrant,* in footnote one of the majority opinion, since the statement that "Ms. Tye has conclusively established that she was replaced by a male," is not an accurate characterization of the evidence as set out in the majority opinion's recitation of facts.

Accordingly, because Ms. Tye did not satisfy her burden of establishing a *prima facie* case, our inquiry should conclude at that point, and result in affirmance of the district court.