W. Elliott JONES, Plaintiff,

v.

OHIO DEPARTMENT OF MENTAL HEALTH, Defendant.

No. C–1–84–37.

United States District Court, S.D. Ohio, W.D.

July 6, 1987.

Robert B. Newman, Cincinnati, Ohio, for plaintiff.

William J. Steele, Rita S. Eppler, Asst. Atty. Gen., Columbus, Ohio, for defendant.

## ORDER

HERMAN J. WEBER, District Judge.

This matter is before the Court upon the Report and Recommendation of the United States Magistrate (doc. no. 48), plaintiff's Motion to Amend (doc. no. 53), defendant's Objections to the Report and Recommendation (doc. no. 61), plaintiff's opposition thereto (doc. no. 65) and all supporting memoranda.

This case was referred to the Magistrate pursuant to Rule 1(g) of Western Division Rule No. 1 and 42 U.S.C. § 2000e–5(f)(5). The Report and Recommendation reflects the findings of fact (doc. no. 48, pp. 2–4) and opinion of the Magistrate following a non-jury trial on the merits of plaintiff's claim of reverse discrimination.

Plaintiff alleges defendant terminated his employment as Superintendent of Rollman Psychiatric Institute in Cincinnati, Ohio, because he was white, in order to provide a defense to a charge of race discrimination defendant expected to be filed by one Curtis Wren, a black whom defendant had discharged on the same date from his position as Superintendent of the Toledo, Ohio Mental Health Center. Defendant denies reverse discrimination and claims that plaintiff's employment was terminated because defendant lost confidence in plaintiff's ability to administer his duties.

At the outset, this Court finds that defendant waived its right to raise the stat-

ute of limitations as a challenge to this Court's jurisdiction. The time periods set up by the Ohio statute are not jurisdictional, and may be waived under the principles of equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); see also *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 n. 6, 104 S.Ct. 1723, 1726 n. 6, 80 L.Ed.2d 196 (1984). Because defendant stated in the Final Pre–Trial Order that it did not contest jurisdiction, did not obtain permission of the Court to raise the issue at trial, presented no reason why this issue was not made the subject of a motion or otherwise raised at the time of the final pre-trial conference, and because plaintiff was caught by surprise and thus unprepared to try this question, this Court concludes that defendant has waived its right to challenge the Court's jurisdiction.

The Supreme Court has made available a special order of proof in employment discrimination cases, the initial stage of which is described as plaintiff's prima facie case. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Askin v. Firestone Tire & Rubber Co.*, 600 F.Supp. 751, 753–54 (E.D.Ky.1985), *aff'd.* 785 F.2d 307 (6th Cir.1986).

> [A] prima facie case of 'reverse discrimination' is established upon a showing that 'background circumstances support the suspicion that defendant is that unusual employer who discriminates against the majority,' (citations omitted); and upon a showing that the employer treated differently employees who were similarly situated but not members of the protected group.

*Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir.1985).

■ By establishing a prima facie case, plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against him. *Burdine*, 450 U.S. at 252, 101 S.Ct. at 1093. This presumption is a procedural device that temporarily ceases plaintiff's burden of producing evidence; it denotes that an issue of fact has been created

for determination by the trier of fact. *Askin*, 600 F.Supp. at 754–55.

■ Once plaintiff establishes a prima facie case, the burden of going forward shifts to defendant to articulate a legitimate reason for its actions. *Board of Trustees v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978). It is sufficient if defendant's evidence raises a genuine issue of fact as to whether it discriminated against plaintiff. *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094.

Where defendant articulates a legitimate, nondiscriminatory reason for its action, the presumption of discrimination "drops from the case," *Id.* at 255, n. 10, 101 S.Ct. at 1095, n. 10, "and the factual inquiry proceeds to a new level of specificity." *Id.* at 255, 101 S.Ct. at 1095. *See also U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714–715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). The "factual inquiry" referred to by the Supreme Court is whether defendant intentionally discriminated against plaintiff. *Id.* at 715, 103 S.Ct. at 1481. In other words, did defendant treat plaintiff less favorably because of his race? *Id.* Plaintiff retains the burden of persuasion, and may succeed in this either directly by persuading the Court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. In short, the district court must decide which party's explanation of the employer's motivation it believes. *Aikens*, 460 U.S. at 716, 103 S.Ct. at 1482.

In the instant case, the Magistrate found that plaintiff established a prima facie case that his employment was terminated because of his race. The evidence established that defendant had numerous reasons for terminating the employment of Wren, but was aware that Wren had filed discrimination charges in the past and would probably do so again if fired. Termination of a white employee who occupied a similar position at the same time could provide a defense to a possible claim of discrimination by Wren. The Magistrate noted that,

in a deposition taken in the Wren case and in then-current news articles, Widmann pointed to the firing of Jones as an example that Wren was not the object of discrimination.

The Magistrate further found that defendant met its burden of articulating a legitimate reason for Jones' discharge. Defendant claimed that it had lost confidence in the ability of Jones to carry on his job. If true, this would be a nondiscriminatory reason for discharge.

■ As mandated by the Supreme Court, the Magistrate proceeded with the next step in the factual inquiry, finding that plaintiff then established by a preponderance of the evidence that defendant's articulated reason for discharge was a pretext and therefore unworthy of credence. Jones' satisfactory performance provided no basis for Widmann's alleged loss of confidence. When asked by Jones to state the reasons for his discharge, Widmann failed to do so, despite state regulations which require that written reasons be given on request. Widmann did not explain when asked what he meant by lack of confidence in Jones. When Widmann was deposed shortly before the trial of this case, on October 24, 1986, he was unable to state a specific reason for his loss of confidence in Jones, but said only that Jones "was not performing effectively."

This Court will not disturb the Magistrate's finding in the matter of pretext unless clearly erroneous as it is for the trier of fact to weigh the evidence.

In *Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d 952 (6th Cir.1985), the United States Court of Appeals for the Sixth Circuit found that a finding of pretext in a Title VII case is one particularly appropriate for resolution by one who heard all the evidence and had a chance to observe the demeanor of the witnesses. That Court held, as a matter of law, that the Magistrate's factual findings must stand under the "clearly erroneous" standard. As noted in that case, the Supreme Court has admonished lower courts to pay more deference to the factual findings of judicial officers who have heard the evidence rather than having merely reviewed a cold record. *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed. 2d 518 (1985).

The Magistrate's factual determinations on the issue of pretext, including the topics of the telephone book and the timing of the simultaneous firings, are issues of fact which this Court finds not to be "clearly erroneous" in light of the evidence available to this Court. This Court, therefore, adopts the Magistrate's Report and Recommendation with respect to the issue of pretext.

This Court, further, adopts all the factual findings contained in the Magistrate's report on pages two through four as not "clearly erroneous."

The Magistrate's ruling with respect to the admission of defendant's Exhibit M is also adopted as not clearly erroneous. His findings that the circumstances underlying its production raise serious questions as to its authenticity and that the defendant attempted to fabricate a second reason for Jones' discharge by producing it just before trial are both issues of fact and, as such, must stand.

■ As to the issue of damages, the unemployment compensation received by plaintiff during 1981 and 1982 should not be deducted from the back pay award. *Rasimus v. Michigan Dept. of Mental Health*, 714 F.2d 614 (6th Cir.1983).

Any fringe benefits the claimant would have received but for discrimination should also be awarded. *Rasimus; Meadows v. Ford Motor Co.*, 510 F.2d 939, 948 (6th Cir.1975). In this case, such benefits would have included the state-owned automobile, the use of which the plaintiff lost for three and one-half years. Lost insurance benefits are also included in this category of compensable losses.

■ In order to encourage the goals of Title VII, district courts are given broad latitude to fashion remedies that make a victim whole by restoring him, as nearly as possible, to the position he would have been in had the discrimination not occurred.

*Ford v. Nicks,* 741 F.2d 858 (6th Cir.1984); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 422, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280; *Rasimus, supra* at 626. Awarding the moving expenses plaintiff would incur upon reinstatement is certainly in keeping with such goals.

The Magistrate, however, miscalculated the back pay award (Report and Recommendation, p. 10) by misstating that plaintiff was paid $53,336.80 for the period beginning October 27, 1985 and ending November 21, 1985. This should have been November 21, 198*6* and therefore $^{11}/_{12}$'s of plaintiff's salary from 1986 should have been deducted from the "Total Wages Lost." The $112,409.60 figure on page 11, therefore, must be reduced by $44,458.34 (or $^{11}/_{12}$'s of plaintiff's 1986 salary of $48,-500). Total wages lost minus total wages earned, therefore, is $67,951.26 to make the Total Back Pay Award $100,651.26.

It is well-settled that reinstatement is appropriate in a Title VII case where judgment was for plaintiff.

■ This is especially true where, as the Magistrate found to be present here, the defendant offered no evidence suggesting the remedy was inappropriate. The reasons enumerated by defendant in objecting to the Report and Recommendation are not sufficient to convince this Court to deny this mandated remedy.

Reinstatement, in this case, should include reinstatement to the State Retirement System and would necessitate contributions by both plaintiff and defendant to bring it to the point it would have been had plaintiff not been fired. This would also include interest.

This Court therefore ADOPTS the Report and Recommendation as modified in this Order to the extent that the plaintiff is entitled to a total of $100,651.26 in back pay.

Upon consideration, therefore, judgment is entered in favor of plaintiff in the amount of $100,651.26 and plaintiff shall be reinstated forthwith to his former position or an equivalent position as it becomes available in the State System.

IT IS SO ORDERED.