940 F.2d 658
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lois S. AILOR, Plaintiff-Appellant,
v.
FIRST STATE BANK OF MAYNARDVILLE, Defendant-Appellee.
 No. 91-5088.
 United States Court of Appeals, Sixth Circuit.
 Aug. 6, 1991.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Lois S. Ailor appeals the district court's grant of summary judgment for defendant-appellee First State Bank of Maynardville, Tennessee ("First State") in this action alleging wrongful discharge, violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Sec. 621-34, and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e to e-17. The principal issue on appeal is whether the district court erred by granting summary judgment for First State Bank. For the reasons that follow, we affirm in part, reverse in part, and remand.
 
 I.
 
 2
 Plaintiff Lois S. Ailor was employed at First State Bank from February 7, 1974, until April 11, 1989, when she was discharged at age 51 in a "reorganization" of the bank. For the year ending December 31, 1988, First State suffered a net loss of $58,000. In late 1988, Ben R. McManus acquired controlling interest in First State and became chairman of the board of directors. On February 21, 1989, McManus hired William H. Snyder, Jr., then 46 years of age, to replace Wayne Cox as president of First State. Wayne Cox was retained as an executive vice-president and loan officer. Shortly after becoming president, Snyder embarked on a program to improve the bank's financial condition. Snyder decided to reorganize the bank by eliminating some positions, and McManus approved his decision.
 
 
 3
 On April 1, 1989, the board of directors conducted its annual meeting and approved Ailor for the office of assistant vice-president of the bank. There was no discussion at the board meeting regarding termination of Ailor or any other employee. In April 1989, First State employed twenty-two full-time employees. On April 11, 1989, Snyder reorganized the bank by eliminating three positions and reassigning those duties to other employees. Plaintiff Ailor was discharged along with Donna Dukes, 39 years of age, and Fred Wright, 34 years of age. Dukes[1] was a teller who had been employed by the bank approximately eight months, and Wright was a loan officer and manager of the main office who had been employed by the bank for less than two years. Both Dukes and Wright were told that they were terminated on the basis of seniority. Ailor, who had more seniority than any other bank employee, was told that she was discharged in order to cut expenses at the bank.
 
 
 4
 At the time of her termination, Ailor had the title of assistant vice-president, and she held the positions of loan officer and branch manager of the bank's County Line branch office. It is undisputed that Ailor was an exemplary employee who was consistently promoted to positions of greater responsibility. When Ailor was terminated, Snyder told her that she would be considered for any opening at the bank for which she would be qualified. Between April 1989 and April 1990 the bank hired seven new employees: four part-time tellers, two full-time tellers and one full-time bookkeeper, and Ailor was not contacted regarding any of these openings.
 
 
 5
 On April 9, 1990, Ailor filed the present action against First State and Snyder[2] alleging age and sex discrimination. Ailor also alleged a pendent state claim of violation of the Tennessee Human Rights Act,[3] Tenn.Code Ann. Sec. 4-21-101, and in an amended complaint, Ailor alleged wrongful discharge, asserting that the bank violated its by-laws by discharging her from her position as assistant vice-president without a vote of the bank's board of directors.
 
 
 6
 On December 13, 1990, First State and Snyder filed a motion for summary judgment. Ailor's response to the motion was due on January 2, 1991, but the district court granted an extension of time until January 7, 1991. Ailor filed a memorandum and exhibits in opposition to the motion for summary judgment on January 7, 1991, and on that same day, First State and Snyder filed a memorandum and an affidavit of Snyder in response regarding the number of employees after the bank's reorganization and the total amount of raises given in April 1989. On January 7, 1991, the district court orally granted the motion for summary judgment, and the court entered a memorandum order granting the summary judgment for the defendant on January 10, 1991. Ailor's timely notice of appeal followed entry of the judgment dismissing her action.
 
 II.
 
 7
 Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The district court's grant of summary judgment is reviewed de novo. Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988). This court must view all facts and inferences drawn therefrom in the light most favorable to the non-moving party. 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987).
 
 
 8
 Ailor argues that the district court erred by granting summary judgment because she presented sufficient evidence to create a jury question as to whether her age and/or sex were factors in the termination of her employment[4]. Ailor also contends that she presented sufficient evidence to create a jury question as to whether the bank's "reorganization" was pretextual. Finally, Ailor asserts that she was wrongfully discharged because First State failed to comply with the bank's by-laws regarding discharge of an officer.
 
 
 9
 The three-step analysis established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981), applies to cases brought under the ADEA and Title VII.
 
 
 10
 First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
 
 
 11
 Burdine, 450 U.S. at 252-53 (citations omitted).[5]
 
 A. Pretext
 
 12
 We first turn to the issue of whether there is a genuine issue of material fact regarding the bank's proffered reason for terminating Ailor. It is appropriate for us to consider the pretext issue first because it affects the analysis of whether Ailor established a prima facie case of age or sex discrimination. First State asserts that it reorganized the bank and eliminated three positions, a true reduction of its work force, after suffering a net loss of $58,000 in 1988. Ailor argues that there is a genuine issue of material fact as to whether the bank's reorganization was pretextual, and she offers the following evidence as proof that the proffered reason for her discharge was pretextual.
 
 
 13
 First, Ailor offers evidence indicating that in April 1989, the month in which she was discharged, First State gave raises totaling $4,775.00. Ailor asserts that in the one-year period following her termination, First State gave raises totaling more than $18,000. Ailor contends that this evidence contradicts First State's claim that she was discharged for economic reasons.
 
 
 14
 Ailor next offers records indicating that the total number of employees at the bank was reduced by only one following the reorganization in April 1989. Ailor's records indicate that in April 1989, First State employed twenty-two full-time employees and one part-time employee. In April 1990, First State employed eighteen full-time employees and four part-time employees, for a total of twenty-two employees. Thus, Ailor asserts that had she not been terminated, the number of employees at First State one year after the alleged reduction in force would be the same as before. See Moody v. Pepsi-Cola Metro. Bottling Co., Inc., 915 F.2d 201, 209 (6th Cir.1990). As further evidence of alleged pretext, Ailor notes that at the time of their discharge, Dukes and Wright were told that they were being terminated on the basis of seniority, while she was told that she was being discharged in order to cut expenses at the bank. Ailor asserts that if cutting expenses were the reason for her termination, the bank could have saved more money by terminating Cox, whose salary was nearly twice that of hers.
 
 
 15
 Viewing the evidence in the light most favorable to Ailor, we hold that there is no genuine issue of material fact as to whether First State's stated reason for terminating Ailor was pretextual. It is undisputed that First State suffered a net loss of $58,000 in 1988. The fact that First State gave raises totaling more than $18,000 in the one-year period following Ailor's termination does not contradict the bank's explanation that Ailor was terminated in order to cut expenses at the bank. Ailor's salary at the time of her termination was $21,000. The bank's termination of Ailor and Wright resulted in a savings of $40,000 in salaries. The bank's decision to save $40,000 by terminating two employees rather than one is the type of business decision for which a court is not permitted to substitute its judgment. Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 106 (2d Cir.1989). Moreover, Ailor's assertion that the number of employees at the bank decreased by only one after her termination is somewhat misleading. While it is true that the total number of employees at First State in April 1990 was twenty-two, four of those employees were part-time tellers. After the reorganization in April 1989, there was a reduction in the number of full-time employees from twenty-two to eighteen. It is undisputed that the bank eliminated two full-time branch manager/loan officer positions, and those positions remain unfilled.
 
 
 16
 The Moody decision relied on by Ailor is distinguishable. In Moody, the evidence showed that if the plaintiff were reinstated, "the number of employees after the alleged reduction in force would be the same as before." 915 F.2d at 209. However, the court also noted that there was "other evidence in th[e] case which could persuade the trier of fact that the reduction in force was merely a pretext." Id. The other evidence consisted of inconsistencies in the testimony of the employer's principal witness as well as discrepancies between the documents reporting the reason for the plaintiff's termination and the witness' explanation. There are not similar discrepancies in the present case. First State's proffered reason for Ailor's discharge is economic necessity, and that is the same reason Ailor was given at the time of her termination. Accordingly, we hold that Ailor's evidence fails to create a genuine issue of material fact as to the reason for her discharge.
 
 B. Age Discrimination Claim
 
 17
 In a discharge case, a plaintiff establishes a prima facie case of age discrimination by showing: (1) he or she is a member of the protected class; (2) he or she was discharged; (3) he or she was qualified for the position; and (4) he or she was replaced by a younger person. Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 69 (6th Cir.1982). In the context of a work force reduction or a structural reorganization by the employer, the fourth element of the prima facie case is modified. See LaGrant v. Gulf & Western Mfg. Co., 748 F.2d 1087, 1091 (6th Cir.1984). In this circuit, for a plaintiff discharged pursuant to a work force reduction to establish a prima facie case he or she must present "direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." Barnes v. Gencorp, Inc., 896 F.2d 1457, 1465 (6th Cir.), cert. denied, 111 S.Ct. 211 (1990). A plaintiff singled out for discharge because of age "could establish a prima facie case by showing that he or she possessed qualifications superior to those of a younger co-worker working in the same position as the plaintiff." Id. at 1466. "Alternatively, a plaintiff could show that the employer made statements indicative of a discriminatory motive...." Id.
 
 
 18
 Ailor easily satisfies the first three elements of a prima facie case of age discrimination. Ailor was 51 years of age on the date she was discharged, and it is undisputed that she was qualified for her position. Ailor asserts that the following additional evidence establishes a prima facie case of age discrimination by tending to indicate that she was singled out for discharge for impermissible reasons. First, Ailor asserts that her responsibilities as branch manager were not eliminated, but were transferred to Jeannie Henderson, age 31. See Rocha v. Great Am. Ins. Co., 850 F.2d 1095, 1101 (6th Cir.1988) (prima facie case of age discrimination established where evidence included that plaintiff's job duties were assumed by younger employees).
 
 
 19
 First State disputes Ailor's assertion and contends that Henderson is simply the head teller at the branch office, which is the same position she held prior to Ailor's discharge. First State acknowledges that upon Ailor's termination, Henderson was told that she was in charge of the other tellers at the branch office, but First State asserts that Henderson does not have the same duties as Ailor did when she was branch manager. Henderson testified in her deposition that Snyder placed her in charge of the branch office when Ailor was terminated.
 
 
 20
 This court has held that "a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." Barnes, 896 F.2d at 1465. A plaintiff discharged in a work force reduction fails to establish a prima facie case by showing only that his former duties were assumed by a co-worker who performed them in addition to other functions. Sahadi v. Reynolds Chem., 636 F.2d 1116, 1118 (6th Cir.1980). In the present case, it is clear that Henderson did not replace Ailor as a loan officer or as an assistant vice-president. Moreover, although Snyder did place Henderson in charge of the branch office upon Ailor's discharge, Henderson assumed this responsibility in addition to her other duties as head teller.
 
 
 21
 As further evidence indicating discriminatory motive on the part of First State, Ailor notes that she was the second oldest loan officer at the bank, and she had more seniority than any other bank employee. Wayne Cox, who was eleven years younger than Ailor and had less seniority, was, as earlier stated, retained as an executive vice-president and loan officer. Moreover, within five months after Ailor was discharged, the bank hired five younger employees, and Ailor was not offered any of these positions. See Parker v. Federal Nat'l Mortgage Ass'n, 741 F.2d 975, 979 (7th Cir.1984) (employee terminated pursuant to reduction in force can establish inference of discrimination by showing that he was disadvantaged in favor of younger persons). This court has held that in the case of a work force reduction, a plaintiff does not establish a prima facie case of age discrimination by demonstrating "that younger persons were retained in other jobs which the plaintiff was qualified to perform." Barnes, 896 F.2d at 1465; see also Sahadi, 636 F.2d at 1118. Thus, the fact that Cox was retained when Ailor was discharged does not establish a prima facie case of age discrimination.
 
 
 22
 As for the younger employees hired after Ailor was discharged, Ailor acknowledges in her brief that the younger persons were hired to fill vacancies at the bank. Because the younger persons were filling vacancies at the bank, the hirings are not inconsistent with the claimed reduction in force. Furthermore, the younger persons were hired as tellers and bookkeepers at the bank, positions of lesser responsibility than that held by Ailor. Clearly, the younger persons were not hired to replace Ailor, and we discern no discriminatory motive from the hirings.
 
 
 23
 Ailor also offers statements made by bank officials which she asserts are indicative of discriminatory motive. Barnes, 896 F.2d at 1466. In the fall of 1987, Ailor interviewed prospective employees for a teller position at the bank's branch office. One of the applicants was Betty Loy, who was 51 years of age. Ailor asserts that upon learning of her intention to hire Loy, Wayne Cox, who was then serving as bank president, instructed her to reevaluate the decision in light of Loy's age. According to Ailor, Cox stated that the bank did not need "too many people of the same age." However, Ailor neglects to mention that Loy was hired for the teller position and continues to be employed by the bank.
 
 
 24
 Ailor next asserts that at a December 1988 meeting of the bank's board of directors, Bud McManus initiated a discussion about terminating Harold Moore, a 61-year old employee of the bank. Ailor contends that McManus specifically discussed Moore's age and noted that Moore would soon be sixty-two years of age and would likely retire. After further discussion, the board decided to defer the decision to terminate Moore, and Moore remains employed by the bank.
 
 
 25
 Ailor also asserts that approximately three months before she was fired, she met with McManus at the bank's branch office. During that meeting, McManus referred to Ailor's age and specifically mentioned the year of her birth. First State acknowledges that McManus commented on Ailor's age; however, McManus explained during his deposition that he learned Ailor's age from his review of retirement plan participants, and that he remembered her age and date of birth because her name was first on the list and her birthday happened to be in the same month but one year later than his own.
 
 
 26
 "It is clear that not every comment concerning a person's age presents direct evidence of discrimination." Young v. General Foods Corp., 840 F.2d 825, 829 (11th Cir.1988), cert. denied, 488 U.S. 1004 (1989). The comments identified by Ailor are "not directly probative of an intent to discriminate." Id. (emphasis in original). Moreover, the statements offered by Ailor were not made in connection with Ailor's termination. Cf. Laugesen v. Anaconda Co., 510 F.2d 307, 313 (6th Cir.1975) (comment on plaintiff's separation notice was sufficiently ambiguous to create dispute of fact). Therefore, the statements are not indicative of a discriminatory motive in discharging Ailor.
 
 
 27
 Ailor has offered no direct or statistical evidence of age discrimination. The circumstantial evidence submitted by Ailor does not tend to indicate that First State singled her out for discharge for impermissible reasons. Therefore, we affirm the district court's holding that Ailor failed to establish a prima facie case of age discrimination.
 
 C. Sex Discrimination Claim
 
 28
 Generally, a plaintiff establishes a prima facie case of sex discrimination by showing that (1) she is a member of a protected class, (2) she was discharged, (3) she was qualified for the position she held, and (4) she was replaced by someone outside the protected class. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir.1986). However, in the context of a work force reduction, it is unclear what a Title VII plaintiff must prove to establish a prima facie case.
 
 
 29
 In Tye v. Polaris Joint Vocational School Bd. of Educ., 811 F.2d 315, 317 n. 1 (6th Cir.), cert. denied, 484 U.S. 924 (1987), this court discussed LaGrant v. Gulf & Western Manufacturing Co., 748 F.2d 1087, 1091 (6th Cir.1984), which holds that for an ADEA plaintiff terminated as part of a reduction in force to establish a prima facie case of age discrimination he must present "direct, circumstantial, or statistical evidence that age was a factor in his termination." In Tye, this court concluded that "because of the differing factual and statutory bases presented by the two cases, it is clear that the LaGrant holding is inapposite to Ms. Tye's case." Tye, 811 F.2d at 317 n. 1. Because of differences between ADEA and Title VII, the court observed that "cases interpreting the procedural framework under one statute are not automatically applicable to the other." Id. The court in Tye also distinguished LaGrant on the ground that Ms. Tye conclusively established that she was replaced by a male while the plaintiff in LaGrant failed to prove that he was replaced by a younger person. Thus, in Tye, this court concluded that Ms. Tye established a prima facie case of sex discrimination.
 
 
 30
 The factual distinction which led this court in Tye to conclude that LaGrant was inapplicable is not present in this case because it is clear that Ailor was not replaced by a male. A female assumed Ailor's responsibilities as branch manager, and no one has replaced Ailor as vice-president or loan officer. Because Ailor cannot establish that she was replaced by a male, this case is distinguishable from Tye. The circumstances which led this court in LaGrant to require an ADEA plaintiff to present additional evidence in his prima facie case are present here and make the holding in LaGrant applicable to this sex discrimination case. Accordingly, to establish a prima facie case of sex discrimination Ailor must offer direct, circumstantial, or statistical evidence tending to indicate that First State singled her out for discharge for impermissible reasons. See LaGrant, 748 F.2d at 1091; Barnes, 896 F.2d at 1465.
 
 
 31
 Ailor offers the following evidence which she argues supports an inference that gender was a factor in the bank's decision to terminate her. First, Ailor notes that she was the only female loan officer at the bank, and despite having more seniority than any other bank employee, she was terminated while two males with less seniority were retained. The two male loan officers retained by the bank were Wayne Cox and Harold Moore.
 
 
 32
 Cox was hired by First State on October 7, 1985, and he served as interim president and president of the bank from July 1987 until February 1989, when he was replaced by Snyder. At that time, Cox became executive vice-president and a loan officer of the bank. Although Cox had less seniority at First State than Ailor, he had experience making and collecting loans and supervising loan operations at another bank since 1971.
 
 
 33
 Harold Moore was hired by First State in November 1982, and he serves as a cashier and loan officer. His duties and responsibilities at the bank include supervising the tellers and the bookkeeping department, administering the biweekly payroll, preparing federal tax returns and state tax and wage reports. Prior to working at First State, Moore worked at another bank as an internal auditor from 1976 until 1982.
 
 
 34
 An examination of the experience and responsibilities of Cox and Moore reveals that they were not less qualified than Ailor. Ailor concedes that she is not qualified to serve as bank president, a position which Cox held, and during her deposition, Ailor acknowledged that she had no experience with payroll, a function which Moore performed. Moreover, the mere fact that First State retained male employees when it eliminated positions during a structural reorganization does not permit an inference that the bank discriminated against Ailor on the basis of gender. Montana, 869 F.2d at 107.
 
 
 35
 Ailor next identifies a statement made by a member of the bank's board of directors which she asserts is indicative of a discriminatory attitude toward women. Ailor asserts that in 1985 when the position of branch manager became available at the bank, a member of the board stated that the bank did not need a woman for that position. However, Ailor fails to add that despite this comment she was promoted to the position of branch manager in 1985. Moreover, during her deposition, Ailor could identify no single promotion or position which she had been denied by the bank.
 
 
 36
 Finally, Ailor points to the disparity in pay she received as compared to male employees as circumstantial evidence of gender discrimination.[6] Ailor asserts that when she became branch manager she did not receive compensation comparable to that of her predecessor, Edward Sharp, despite having almost identical experience and responsibilities. Ailor also notes that although she had more seniority than Wayne Cox, his salary of $39,600 was almost twice as much as her salary of $21,000. However, evidence of disparate pay is not indicative of discriminatory intent in discharging Ailor.
 
 
 37
 Ailor failed to offer direct, circumstantial or statistical evidence sufficient to create an inference that gender was a factor in the bank's decision to terminate her. The record indicates that after Ailor was terminated, a woman assumed her duties as branch manager, and other women were hired to fill vacancies at the bank. The mere fact that the bank retained male loan officers when it eliminated Ailor's position during a reorganization does not create an inference that the bank discriminated against her on the basis of gender. Montana, 869 F.2d at 107. Accordingly, we hold that the district court properly granted summary judgment on the sex discrimination claim.
 
 D. Wrongful Discharge
 
 38
 In her amended complaint, Ailor alleged that she was discharged in violation of the bank's by-laws, which provide in relevant part that "[a]ny officer elected or appointed by the Board of Directors may be removed at any time by the affirmative vote of a majority of the whole Board of Directors." In granting summary judgment, the district court did not specifically address Ailor's wrongful discharge claim. Ailor concedes that she had no employment contract or guarantee of continued employment. Nevertheless, Ailor contends that she was wrongfully discharged because the bank did not comply with its by-laws.
 
 
 39
 The district court dismissed the pendent state claim without comment after granting summary judgment on the federal claims. See United Mineworkers v. Gibbs, 383 U.S. 715, 726 (1966). "Where an action in federal court includes both federal and pendent state claims and the court dismisses the federal claims before trial on a motion for summary judgment, the pendent state claims are ordinarily dismissed as well." Williams v. City of River Rouge, 909 F.2d 151, 157 (6th Cir.1990). "The exercise of jurisdiction over pendent state claims is discretionary with the district court." Mitroff v. Xomox Corp., 797 F.2d 271, 278 (6th Cir.1986).
 
 
 40
 Ailor does not argue that the district court abused its discretion by dismissing the state law claim. Rather, her brief addresses the merits of the wrongful discharge claim. Because the wrongful discharge claim is a matter of state law, it is more properly addressed to the Tennessee courts. Williams, 909 F.2d at 156. Accordingly, we hold that the district court did not abuse its discretion by dismissing the state claim; however, the dismissal should be without prejudice. See Mitroff, 797 F.2d at 278 (affirming district court although it did not explain reasons for its dismissal of state claims).
 
 III.
 
 41
 For the reasons stated, we AFFIRM the summary judgment of the district court dismissing the plaintiff's claims except for its dismissal of the pendent claim which we REVERSE. We REMAND the pendent claim to the district court with instructions to dismiss it without prejudice.
 
 
 
 [1]
 Dukes was rehired approximately two weeks later to fill a teller vacancy at the bank's branch office
 
 
 [2]
 On January 10, 1991, Ailor voluntarily dismissed her action against Snyder
 
 
 [3]
 This claim was not incorporated in the pre-trial order dated August 16, 1990, nor is it addressed in this appeal. Thus, this claim is deemed abandoned
 
 
 [4]
 Ailor also contends that the district court improperly received and considered the Snyder affidavit filed by First State after her response to the motion for summary judgment. Ailor argues that her action was improperly dismissed before she had an opportunity to respond to the late-filed affidavit. See Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc., 754 F.2d 404, 409 (6th Cir.1985). Assuming, arguendo, that the district court improperly received the affidavit, the remedy for the error is for this court to disregard the information in the affidavit when conducting our de novo review of the motion for summary judgment. Id. at 410. Accordingly, we have not considered the information in the affidavit in determining the outcome of this case
 
 
 [5]
 This court has noted that "the McDonnell Douglas test is not to be applied mechanically, instead opting for a case-by-case approach that focuses on whether age [or sex] was in fact a determining factor in the employment decision." Barnes v. Gencorp, Inc., 896 F.2d 1457, 1465 n. 9 (6th Cir.), cert. denied, 111 S.Ct. 211 (1990)
 
 
 [6]
 Ailor's complaint does not allege a claim under the Equal Pay Act, 29 U.S.C. Sec. 206(d), or a claim of wage discrimination under Title VII, 42 U.S.C. Sec. 2000e-2(a)(1)